IN THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

CASE NO.:

WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-by-merger to Wachovia Bank, National Association, a national banking association, individually, and as agent for itself and Regions Bank, an Alabama state chartered bank, successor-by-merger to AmSouth Bank; and REGIONS BANK, an Alabama state chartered banking association, successor-by-merger to AmSouth Bank,

   Plaintiffs,

vs.

SABRINA BARBER, an individual, f/k/a SABRINA AZZOUZ; BLAKER ENTERPRISES, LLC, a Nevis limited liability company; TD AMERITRADE, INC., a New York corporation; and APPLIED BANK, a Delaware banking corporation,

   Defendants.

INJUNCTIVE RELIEF SOUGHT

6:14-cv-901-ORL-36KRS

## COMPLAINT

Plaintiffs, WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-by-merger to Wachovia Bank, National Association, a national banking association, individually, and as agent for itself and Regions Bank, an Alabama state chartered bank, successor-by-merger to AmSouth Bank ("Wells Fargo") and REGIONS BANK, an Alabama state chartered banking association, successor-by-merger to AmSouth Bank ("Regions", and together with Wells Fargo, the "Plaintiffs"), by and through their respective undersigned attorneys, hereby sue Defendants, SABRINA BARBER, an individual, f/k/a SABRINA AZZOUZ ("Barber"), BLAKER ENTERPRISES, LLC, a

1

Nevis limited liability company ("Blaker"), TD AMERITRADE, INC., a New York corporation ("TD"), and APPLIED BANK, a Delaware banking corporation ("Applied"), and for causes of action states the following:

## JURISDICTIONAL ALLEGATIONS

1. Wells Fargo is a national banking corporation authorized to transact business in the State of Florida, but having its principal place of business in San Francisco, California.

2. Regions is an Alabama state chartered banking association authorized to transact business in the State of Florida, but having its principal place of business in Birmingham, Alabama.

3. Barber is a natural person residing at 472 Valley View Dr., Winter Garden, Florida 34787-4512, which residence is located in Orange County, Florida.

4. Blaker is a limited liability company organized in the Island of Nevis, but, pursuant to its Operating Agreement, has a principal office at 472 Valley View Dr., Winter Garden, Florida 34787-4512, which office is located in Orange County, Florida.

5. TD is a New York corporation authorized to transact business in Florida, and having a principal place of business in Omaha, Nebraska.

6. Applied is a Delaware banking corporation having a principal place of business in Newark, Delaware.

7. This Court has personal jurisdiction over the Defendants because Barber resides in the State of Florida, Blaker has its principal place of business in the State of Florida, TD has submitted to the jurisdiction of the State of Florida by being authorized

00010101131943\1597001v3

to transact, and actually transacting, business within the State of Florida, and Applied has submitted itself jurisdiction of the State of Florida by electronically accepting deposits from and transacting other business with citizens of Florida, including, without limitation, Barber and Blaker (Deposition 18:7-16).

8.     This Court has subject matter jurisdiction over the claims alleged below under 28 U.S.C. § 1332, since the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and attorneys' fees and there is complete diversity of citizenship as Wells Fargo is a citizen of California, Regions is a citizen of Alabama, Barber and Blaker are citizens of Florida, TD is a citizen of Nebraska and New York, and Applied is a citizen of Delaware.

9.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 because Barber resides in and Blaker has its principal place of business within this District and because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## GENERAL ALLEGATIONS

10.     The Plaintiffs are the owners and holders of that certain *Partial Summary Final Judgment as to Counts V and VI of Plaintiff's Complaint* entered on January 20, 2010 as modified by that certain *Deficiency Judgment as to Kevin H. Azzouz and Sabrina M. Azzouz* entered on October 3, 2013 in the amount of $62,491,162.98 in Orange County, Florida, Circuit Court Case No. 2008-CA-12672-O (together, the "Judgment"), which Judgment remains outstanding. True copies of the documents comprising the Judgment are attached hereto as **Composite Exhibit "A"**.

11.     Barber is a judgment debtor under the Judgment.

12.     Blaker is a single-member limited liability company, the sole member of which is Barber (Deposition 28:10-15).

13.     Among other things, Blaker owns those certain accounts located at TD and Applied as further described herein. TD and Applied are sued herein solely as nominal defendants due the existence of such accounts.

14.     On June 6, 2014, The Plaintiff's undersigned attorneys deposed Barber in aid of execution (the "Deposition"). Pursuant to documents produced in connection with the Deposition and Barber's testimony at the Deposition, the Plaintiffs have become aware of the facts described below in the section entitled "Transfers." The transcript of Barber's Deposition is being filed with this Court contemporaneously with this Complaint.

## TRANSFERS

### *Homestead Accounts*

15.     In connection with the sale of her former marital residence during her dissolution of marriage, Barber received approximately ONE MILLION DOLLARS sometime prior to April 13, 2009 (Deposition 67:15 – 68:4).

16.     Barber deposited those funds in Account No. xxx0012 at American Momentum Bank (the "AM-012 Account"), which funds continued to earn interest until September 21, 2009, at which time the AM-012 Account contained a total sum of $1,066,776.85. A true copy of the October 2009 account statement for the AM-012

4

Account reflecting said amount is attached hereto as **Exhibit "B"** and attached to the Deposition as a portion of Exhibit No. 26.

17. The AM-012 Account was designated a "homestead" account as such funds represented proceeds from the sale of Barber's former homestead, which, at the time, she allegedly intended to use to purchase another homestead.

18. On September 21, 2009, Barber closed the AM-012 Account and used the funds therein to purchase a certificate of deposit at American Momentum Bank bearing Account No. xxxxxxxx1078 (the "CD"), which was also designated a "homestead" account (Deposition 68:5-8) . True copies of the October-December 2009 and January-March 2010 account statements for the CD are attached hereto as **Composite Exhibit "C"** and attached to the Deposition as a portion of Exhibit No. 26.

19. Such funds were subsequently transferred to AIG Bank Account No. xxxxx8275 (the "AIG-275 Account") on February 17, 2010, which account was also designated as a "homestead" account (Deposition 76:5 – 77:7). A true copy of the February 2010 account statement for the AIG-275 Account reflecting such deposit is attached hereto as **Exhibit "D"** and attached to the Deposition as Exhibit No. 34.

20. In a previous deposition of Barber conducted on March 15, 2010 (the "Prior Deposition"), Barber testified that she then had a present intent to use the funds in that account to purchase a million dollar home (Prior Deposition 57:6 – 58:14, 61:19 – 62:6, 63:12 – 64:10). True copies of the relevant portions of the Prior Deposition are attached hereto as **Exhibit "E"**.

## *Purchase of Homestead*

21. On April 15, 2010, Barber withdrew the sum of $227,026.20 from the AIG-275 Account, which remained designated a "homestead" account at such time (Deposition 77:11-23). A true copy of the April 2010 account statement for the AIG-275 Account reflecting that withdrawal is attached hereto as **Exhibit "F"** and attached to the Deposition as Exhibit No. 35.

22. As admitted in her Deposition testimony, such funds were withdrawn to purchase a home located at 472 Valley View Drive, Winter Garden, Florida 34787, which home was then and is presently her homestead (Deposition 77:11 – 78:14).

23. The purchase of her current homestead with funds from the "homestead" account is further evidenced by Barber's identification during the Deposition of the Settlement Statement for her home, indicating "Cash From Borrower" of precisely the same amount of money ($227,026.20) that was withdrawn (Deposition 78:2-14). A true copy of said Settlement Statement is attached hereto as **Exhibit "G"** and attached to the Deposition as a portion of Exhibit No. 36.

24. Following such purchase, the funds remaining in her "homestead" account, notwithstanding that designation, were no longer entitled to the homestead protection provided by Florida law[1] and thus would have been available to partially satisfy the Plaintiffs' Judgment.

---

[1] "[W]e hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only so much of the proceeds of the sale

## *The Blaker Transfers*

25. On February 28, 2011, Barber withdrew the sum of $641,350.00 from the AIG-275 Account as well as the sum of $228,650.49 from AIG Bank Account No. xxxxx0009 (the "<u>AIG-009 Account</u>")(Deposition 79:13 – 80:16). Added together, these sums equal $870,000.49. A true copy of the February 2011 AIG Bank statement for both such accounts is attached hereto as **Exhibit "H"** and attached to the Deposition as Exhibit No. 38.

26. As indicated by such statements, at the time of these transfers, neither the AIG-275 Account nor the AIG-009 Account was designated as a "homestead" account.

27. On or about March 10, 2011, Barber caused the exact amount of funds previously withdrawn from AIG Bank (*i.e.*, $870,000.49) to be deposited with TD in Account No. xxx-xx4111 (the "<u>TD-111 Account</u>"), which account was established in the name of Blaker (Deposition 81:15 – 82:23). A true copy of the July 2011 account statement for the TD-111 Account evidencing such deposit is attached hereto as **Exhibit "I"** and attached to the Deposition as Exhibit No. 41.

28. The TD-111 Account owned by Blaker was an "institutional account" which Barber explained in her Deposition meant than an investment advisor guides the investments within the account rather than her personally (Deposition 31:3-9).

---

as are intended to be reinvested in another homestead may be exempt under this holding. Any surplus over and above that amount should be treated as general assets of the debtor." <u>Orange Brevard Plumbing & Heating Co. v. La Croix</u>, 137 So.2d 201, 206 (Fla. 1962).

29. Barber caused the organization of Blaker on January 10, 2011, just a few months prior to this transfer. A true copy of the organizational documents, including the Operating Agreement, for Blaker are attached hereto as **Composite Exhibit "J"** and attached to the Deposition as Exhibit No. 5.

30. The Operating Agreement of Blaker indicates that Barber is both the sole manager and sole member of Blaker.

### *$275,000 Subsequent Transfer*

31. In September 2011, Blaker transferred $275,000.00 from the TD-111 Account to the AIG-275 Account (which account was maintained in the name of Barber)(Deposition 83:2 – 84:25). True copies of September 2011 account statements for both such accounts evidencing this transfer are attached hereto as **Composite Exhibit "K"** and attached to the Deposition as Exhibit Nos. 42 and 43.

32. Prior to this transfer, the AIG-275 account contained only $13,891.51.

33. During her Deposition, Barber testified that this transfer was made to avoid additional investment advisory fees on those funds (Deposition 83:6-17).

34. On February 9, 2012, Barber transferred $220,000.00 out of the AIG-275 Account, however, at the present time, the Plaintiffs are unable to identify the recipient of such funds, as Barber did not recall that information when questioned about it in her Deposition (Deposition 85:4-21). A true copy of the February 2012 account statement for the AIG-275 Account evidencing such transfer is attached hereto as **Exhibit "L"** and attached to the Deposition as Exhibit No. 44.

### *$110,000 Subsequent Transfer*

35. On April 2, 2012, Blaker transferred $110,000.00 from the TD-111 Account to another account with TD held in the name of Blaker bearing Account No. xxx-xx2983 (the "TD-983 Account")(Deposition 85:25 – 87:19). Account statements the TD-983 account for April 2012 and August 2012 evidencing such transfer are attached hereto as **Composite Exhibit "M"** and attached to the Deposition as Exhibit Nos. 45 and 46.

### *The Current Funds*

36. Barber further testified and noted in her response to Interrogatory No. 19 of *Plaintiff's Interrogatories in Aid of Execution Directed to Defendant, Sabrina M. Azzouz, n/k/a Sabrina M. Barber* propounded in connection with the Judgment that she fired her investment advisor in 2013 and thereafter converted the TD-111 account to "retail" account, whereby she would personally guide the investments within the account (Deposition 31:3-17, 90:11 – 91:2, 91:19 – 92:10). A true copy of Barber's response to said Interrogatories is attached hereto as **Exhibit "N"** and attached to the Deposition as Exhibit No. 2.

37. Barber testified in her Deposition that this change in account type lead to the closure of the TD-111 Account, and the opening, with the same funds, of TD Account No. xxx-xx3474 (the "TD-474 Account"), also held in the name of Blaker (Deposition 91:19 – 92:10).

38. As of April 30, 2014 (the date of the last statement produced by Barber for each such account), the TD-474 Account had a total value of $489,848.13 and the TD-

000I0I0\131943\1597001v3

983 Account had a total value of $77,191.69. True copies of such account statements are attached hereto as **Composite Exhibit "O"** and attached to the Deposition as Exhibit Nos. 49 and 50.

### *The Impending Transfers to Mauritius*

39. In her Deposition, Barber testified that not all of the funds indicated by the April 2014 statement presently remained in the TD-474 Account, as approximately $265,552.02 had been transferred to Applied Bank as a conduit to an anticipated further transfer in the near future to an investment advisor named Investors Europe located in the Republic of Mauritius (an island nation located off the coast of Africa, east of Madagascar)(Deposition 92:11 – 96:13).

40. Upon information and belief, such funds may presently be located in Applied Bank Account No. xxxxxx8079 or Account No. xxxxxx9688 (which Barber previously maintained) or may be in a newly opened account in the name of either Barber or Blaker (collectively, the "Applied Accounts").

41. Additionally, Barber testified in her deposition that she likewise intends to transfer the remaining balance of the TD-474 Account (approximately $224,296.11) to the same advisor in the Republic of Mauritius in the near future (Deposition 96:14 – 97:13).

### COUNT I
### TEMPORARY INJUNCTION REGARDING PERSONAL PROPERTY

42. This is an action against Defendants, Barber, Blaker, TD, and Applied for a temporary injunction against said Defendants, enjoining Barber, Blaker, TD, Applied, and their respective officers, directors, members, agents, employees and those in concert

or participation with them, from taking any further actions with respect to any funds derived from the $870,000.49 originally transferred into the TD-111 Account, including, without limitation, the TD-983 Account, the TD-474 Account, the Applied Accounts to the extent of the $265,552.02 transfer referenced above, and the $220,000.00 transferred from AIG-275 Account on or about February 9, 2012 (collectively, the "Injunction Accounts") without the prior written authorization of the Plaintiffs or Order of this Court, in order to maintain the status quo while the Plaintiffs seek to enforce thier remedies pursuant to this Complaint, and for other relief pursuant to relevant statutes and case law.

43.     The averments contained in paragraphs 1 through 41 are incorporated herein as if fully set forth below.

44.     Based upon the facts set forth above, nearly all of which are derived from documents produced by Barber or Barber's own admissions in her Deposition, the Plaintiffs have a substantial likelihood of success on the merits of its action.

45.     The Injunction Accounts contain funds of Barber which would otherwise be available to (partially) satisfy her debt owed to the Plaintiffs as a result of the Judgment, and, based upon Barber's Deposition testimony, such funds are being disposed of, secreted, concealed, and converted in order to deprive the Plaintiffs of payment of the indebtedness owed to the Plaintiffs by Barber.

46.     The Plaintiffs will be irreparably injured if an injunction is not issued to immediately enjoin Barber, Blaker, TD, and Applied from disposing of, secreting, concealing, and unlawfully converting the funds in the Injunction Accounts in an effort to

0001010\131943\1597001v3

avoid the effect of the Plaintiffs' Judgment before the Plaintiffs' claims can be heard on the merits.

47. Said injury to the Plaintiffs outweighs any potential injury that the proposed temporary injunction may cause to Barber, Blaker, TD, or Applied.

48. The proposed temporary injunction, if issued, will not be adverse to the public interest.

49. To preserve the status quo, the Plaintiffs are entitled to an injunction which immediately enjoins Barber, Blaker, TD, Applied, and their respective officers, directors, members, agents, employees and those in concert or participation with them, from taking any further actions with respect to the Injunction Accounts without the prior written authorization of the Plaintiffs or Order of this Court, until such time as the Plaintiffs' claims asserted in this action can be heard.

WHEREFORE, the Plaintiffs respectfully request that this Court enjoin Defendants, Barber, Blaker, TD, Applied, and their respective officers, directors, members, agents, employees and those in concert or participation with them, from taking any further actions with respect to the Injunction Accounts without the prior written authorization of the Plaintiffs or Order of this Court during the pendency of this action, and grant such other and further relief as this Court deems just and proper.

0001010\131943\1597001v3

## COUNT II
## FORECLOSURE OF MEMBERSHIP INTEREST OR, IN THE ALTERNATIVE, ISSUANCE OF CHARGING ORDER

50. This is an action against Defendant, Barber, for the foreclosure of her membership interest in Blaker (a single-member limited liability company), or in the alternative, for the issuance of a charging order against Barber's interest in Blaker.

51. The averments contained in paragraphs 1 through 41 are incorporated herein as if fully set forth below.

52. Section 608.433(4)(a), Florida Statues, provides "[o]n application to a court of competent jurisdiction by any judgment creditor of a member or a member's assignee, the court may enter a charging order against the limited liability company interest of the judgment debtor or assignee rights for the unsatisfied amount of the judgment plus interest."

53. Furthermore, Section 608.433(6), Florida Statutes, provides:

> In the case of a limited liability company having only one member, if a judgment creditor of a member or member's assignee establishes to the satisfaction of a court of competent jurisdiction that distributions under a charging order will not satisfy the judgment within a reasonable time, a charging order is not the sole and exclusive remedy by which the judgment creditor may satisfy the judgment against a judgment debtor who is the sole member of a limited liability company or the assignee of the sole member, and upon such showing, the court may order the sale of that interest in the limited liability company pursuant to a foreclosure sale. A judgment creditor may make a showing to the court that distributions under a charging order will not satisfy the judgment within a reasonable time at any time after the entry of the judgment and may do so at the same time that the judgment creditor applies for the entry of a charging order.

54. Based upon the discovery propounded by the Plaintiffs and the Deposition taken of Barber, distributions under a charging order will not satisfy the Judgment within

13

a reasonable time as (i) Blaker is not in possession of sufficient assets to satisfy the Judgment within a reasonable time, and (ii) Barber is the sole-member of Blaker, Barber is unlikely to authorize distributions in a sufficient amount to satisfy the Judgment within a reasonable time, and in fact would be unlikely to authorize any distributions at all if a charging order were in place.

WHEREFORE, the Plaintiffs respectfully request that this Court order the foreclosure sale of Barber's membership interest in Blaker (a single-member limited liability company), or in the alternative, issue a charging order against Barber's interest in Blaker, and grant such other and further relief as this Court deems just and proper.

## COUNT III
## AVOIDANCE OF FRAUDULENT TRANSFERS BASED ON ACTUAL FRAUD UNDER SECTION 726.105(1)(A), FLORIDA STATUTES

55. This is an action by the Plaintiffs for the avoidance of all of the above-referenced transfers from Barber to Blaker, including all such subsequent transfers by Blaker (collectively, the "Blaker Transfers") in violation of Section 726.105(1)(a), Florida Statutes, based on actual fraud, against Defendants, Barber and Blaker and for other relief pursuant to relevant statutes.

56. The averments contained in paragraphs 1 – 41 above are incorporated herein as if fully set forth below.

57. The Plaintiffs are the owners and holders of the Judgment, thus the Plaintiffs are a creditor (as such term is defined in Chapter 726) whose claim (as such term is defined in Chapter 726) against Barber arose prior to the Blaker Transfers.

14

58.     As alleged in the foregoing paragraphs, Barber and Blaker were parties to fraudulent transfers (as such term is defined in Chapter 726, Florida Statutes).

59.     Barber engaged in actual fraud pursuant to Section 726.105(1)(a), Florida Statutes, because the Blaker Transfers were made with the intent to hinder, delay, or defraud the Plaintiffs' collection efforts.

60.     Actual intent to hinder, delay, or defraud the Plaintiffs' collection efforts may be determined by proving "badges of fraud" as delineated in Section 726.105(2), Florida Statutes.

61.     The Blaker Transfers were made with the actual intent to hinder, delay, or defraud the Plaintiffs' collection efforts, as evidenced by the following badges of fraud:

(a)     The Blaker Transfers were to an insider (as defined in Chapter 726) because Barber is the sole member of Blaker.

(b)     Barber retained possession or control of the funds following the Blaker Transfers as she is the sole member of Blaker.

(c)     Before the Blaker Transfers were made, Barber had been sued by the Plaintiffs, and the Judgment had been obtained against Barber.

(d)     Barber has attempted to remove or conceal assets by creating a Nevisian company to hold the assets transferred by the Blaker Transfers.

(e)     No value or reasonably equivalent value was received in exchange for the Blaker Transfers. Specifically, the Blaker Operating Agreement notes that Barber contributed only the sum of $100 in exchange for her membership interest therein.

(f)     Barber was insolvent at the time of the Blaker Transfers as she did not have sufficient assets to satisfy the Plaintiffs' claims against her under the Judgment.

(g)     The Blaker Transfers occurred after Judgment was entered against her and shortly after the funds transferred were no longer protected from execution by Florida's homestead laws.

62.     Based upon the foregoing, the Blaker Transfers were clearly made in violation of Section 726.105(1)(a), <u>Florida Statutes</u>, with the actual intent to hinder, delay, or defraud the Plaintiffs' collection efforts.

63.     All conditions precedent to the bringing of this action have occurred or have been waived.

WHEREFORE, the Plaintiffs respectfully request that this Court: (i) find that the Blaker Transfers were fraudulent transfers pursuant to Section 726.105(1)(a), <u>Florida Statutes</u>, based on actual fraud; (ii) invalidate the Blaker Transfers and order all such funds be paid over to the Plaintiffs in partial satisfaction of the claims of the Plaintiffs under the Judgment; and (iii) award the Plaintiffs such other and further relief as this Court may deem just and proper.

<u>**COUNT IV**</u>
<u>**AVOIDANCE OF FRAUDULENT TRANSFERS BASED ON CONSTRUCTIVE FRAUD UNDER SECTION 726.106(1), FLORIDA STATUTES**</u>

64.     This is an action by the Plaintiffs for the avoidance of the Blaker Transfers in violation of Section 726.106(1), <u>Florida Statutes</u>, based on constructive fraud, against Defendants, Barber and Blaker, and for other relief pursuant to relevant statutes.

65. The averments contained in paragraphs 1 – 41 above are incorporated herein as if fully set forth below.

66. The Plaintiffs are the owners and holders of the Judgment, thus the Plaintiffs are a creditor (as such term is defined in Chapter 726) whose claim (as such term is defined in Chapter 726) against Barber arose prior to the Blaker Transfers.

67. As alleged in the foregoing paragraphs, Barber and Blaker were parties to fraudulent transfers (as such term is defined in Chapter 726, Florida Statutes).

68. Pursuant to Section 726.106(1), Florida Statues, "a transfer made… by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made… if the debtor made the transfer… without receiving a reasonably equivalent value in exchange for the transfer… and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer…"

69. The Blaker Transfers were fraudulent as to the Plaintiffs because:

(a) A "claim" under Chapter 726, Florida Statues, is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"; thus the Plaintiffs' claim against Barber arose no later than January 20, 2010 (being the initial date of the Judgment), which date is prior to all of the Blaker Transfers;

(b) Barber made the Blaker Transfers without receiving a reasonably equivalent value in exchange for the transfers. Specifically, the Blaker Operating

0001010\131943\1597001v3

Agreement notes that Barber contributed only the sum of $100 in exchange for her membership interest therein; and

(c) Barber was insolvent at the time of the Blaker Transfers as she did not have sufficient assets to satisfy the Plaintiffs' claims against her under the Judgment.

70. Based upon the foregoing, the Blaker Transfers were clearly made in violation of Section 726.106(1), Florida Statutes, with constructive intent to hinder, delay, or defraud the Plaintiffs' collection efforts.

71. All conditions precedent to the bringing of this action have occurred or have been waived.

WHEREFORE, the Plaintiffs respectfully request that this Court: (i) find that the Blaker Transfers were fraudulent transfers pursuant to Section 726.106(1), Florida Statutes, based on constructive fraud; (ii) invalidate the Blaker Transfers and order all such funds be paid over to the Plaintiffs in partial satisfaction of the claims of the Plaintiffs under the Judgment; and (iii) award the Plaintiffs such other and further relief as this Court may deem just and proper.

Dated this 10th day of June, 2014.

Gary Soles
Florida Bar No. 0614149
**Michael S. Provenzale**
Florida Bar No. 0056834
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 S. Orange Avenue, Suite 200
Orlando, Florida 32801

Telephone: 407-843-4600
Facsimile: 407-843-4444
gary.soles@lowndes-law.com
michael.provenzale@lowndes-law.com
deborah.meadows@lowndes-law.com
anne.fisher@lowndes-law.com
litcontrol@lowndes-law.com
*Attorneys for Plaintiff, Wells Fargo Bank, N.A.*

**Timothy J. Kiley**
Florida Bar No. 0044352
Winderweedle Haines Ward & Woodman, PA
Post Office Box 1391 (32802)
390 N. Orange Avenue, Suite 1500
Orlando, FL 32801
Tel: 407-423-4246
Fax: 407-423-7014
tkiley@whww.com
*Attorneys for Plaintiff, Regions Bank*