DOC# 20130540330 B: 10647 P: 5116
10/09/2013 11:37:28 AM Page 1 of 6
Rec Fee: $52.50
Martha O. Haynie, Comptroller
Orange County, FL
PU - Ret To: LOWNDES DROSDICK ET AL



WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-by-merger to Wachovia Bank, National Association, a national banking association, individually, and as agent for itself and Regions Bank, an Alabama state chartered bank, successor by merger to AmSouth Bank; and REGIONS BANK, an Alabama state chartered banking association, successor by merger to AmSouth Bank,

Plaintiffs,

vs.

VP PHASE III, LTD., a Florida limited partnership; KEVIN H. AZZOUZ, an individual; SABRINA M. AZZOUZ, an individual; et al.,

Defendants.

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2008-CA-12672-O

_____/

### DEFICIENCY JUDGMENT AS TO KEVIN H. AZZOUZ AND SABRINA M. AZZOUZ

THIS CAUSE came before this Court on October 3, 2013, upon the *Motion for Deficiency Judgment and Memorandum of Law in Support Thereof* (the "Motion") by WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-by-merger to Wachovia Bank, National Association, a national banking association, individually, and as agent for itself and Regions Bank, an Alabama state chartered bank, successor by merger to AmSouth Bank; and

**EXHIBIT**

"A"

State of Florida, County of Orange
I hereby certify that the foregoing is a true and correct copy of the instrument filed in this office.
Confidential items have been removed, as necessary per Fla. R. Jud. Admin. 2.420.
___ ese my hand and official seal this ___ day of ___, 20__.
___ Clerk of the Circuit Court
Deputy Clerk.

REGIONS BANK, an Alabama state chartered banking association, successor by merger to AmSouth Bank ("Plaintiffs"), and the Court, having considered the Motion and pleadings filed in this cause, having heard the arguments of counsel, having heard testimony and reviewed the evidence presented at the evidentiary hearing on the Motion, and being otherwise fully advised in the premises, the Court hereby:

FINDS, ORDERS, and ADJUDGES as follows:

1. The Motion is hereby **GRANTED** as set forth herein.

2. This Court has jurisdiction of and over Defendants, KEVIN H. AZZOUZ and SABRINA M. AZZOUZ; and the subject matter of this action.

3. On May 11, 2010, the Clerk of Court held a properly conducted judicial foreclosure sale (the "Foreclosure Sale") of the property which is the subject of this lawsuit (the "Subject Property").

4. The Court finds that as of the date of the Foreclosure Sale the outstanding debt owed to Plaintiffs as set forth in the *Summary Final Judgment of Foreclosure* entered by this Court on May 6, 2009 (the "Foreclosure Judgment") against the Defendants herein is:

| | |
|---|---|
| A. Foreclosure Judgment Amount | $59,675,567.66 |
| B. Accrued interest from Judgment Date through Sale Date | $4,839,443.30 |
| C. Sale Fee | $140.00 |
| D. Publication Fee | $4,532.20 |
| TOTAL: | $64,519,683.16 |

5. The Court finds that the fair market value of the Subject Property on the date of the Foreclosure Sale was $13,070,000.00 (the "Fair Market Value").

6.    Subtracting the Fair Market Value from the amount of the Foreclosure Judgment, the
      Court finds that a deficiency exists in the amount of $51,449,683.16, plus statutory
      interest from the date of the Foreclosure Sale to the date of this deficiency judgment in
      the amount of $11,041,479.82, for a total deficiency judgment amount of $62,491,162.98.

7.    Accordingly, the Court hereby enters a deficiency judgment effective October 3, 2013, in
      favor of Plaintiffs and against Defendants, KEVIN H. AZZOUZ AND SABRINA M.
      AZZOUZ, jointly and severally, in the sum of $62,491,162.98 (the "Deficiency
      Judgment).

8.    The Deficiency Judgment awarded herein shall bear interest at the rate of 4.75% per year
      in accordance with Section 55.03, Florida Statutes.

9.    Pursuant to Section 55.10(1), Florida Statutes, Plaintiffs' address is 301 South College
      Street, Charlotte, NC 28288.

10.   Pursuant to Section 55.01, Florida Statutes, the Defendants' addresses are as follows:

                Sabrina Barber
                472 Valley View Drive
                Winter Garden, FL 34787

                Kevin H. Azzouz
                1776 Tonini Drive, Apt. 11,
                San Luis Obispo, CA 93405-7449

                Kevin H. Azzouz
                8263 Via Rosa
                Orlando FL 32836

                Kevin H. Azzouz
                2637 E. Atlantic Blvd.
                Apt 18839 E
                Pompano Beach  FL 33062

3

0001010\131943\1534753v1

10/3/2013 5:52 PM FILED IN OFFICE CLERK CIRCUIT COURT ORANGE CO FL

> Kevin H. Azzouz,
> 2360 Foothill Rd., Apt. A
> Santa Barbara, CA 93105
>
> Kevin H. Azzouz,
> 606 Broadway, #504,
> Santa Monica, CA 90401
>
> Kevin H. Azzouz,
> 1528 6th St., Apt. 302,
> Santa Monica, CA 90401

11.  All Defendants shall fully cooperate with Plaintiffs in any post-judgment discovery, including but not limited to any deposition in aid of execution sought to be taken by Plaintiffs.

12.  This Court retains jurisdiction of this case to award attorneys' fees and costs to Plaintiffs and to enter such further orders that are just and proper.

FOR ALL OF WHICH AMOUNTS LET EXECUTION ISSUE FORTHWITH.

DONE AND ORDERED in Chambers in Orange County, Florida, this _____3_____ day of October, 2013.

<br>

DONALD A. MYERS, JR.
CIRCUIT JUDGE

0001010\131943\1534753v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail to the parties on the Service List below, this ___ day of October, 2013.

Judicial Assistant/Attorney

Plaintiff's Counsel will furnish a true and correct copy of the foregoing via E-Mail to the parties on the Service List below at the respective parties' primary and secondary e-mail addresses (or to the e-mail address indicated in the records of the Florida Bar) *Note: As this matter is in the deficiency phase, and as a foreclosure judgment has been entered eliminating interests of junior lienor, as of September 19, 2013, only those parties affected by the deficiency will be served with future pleadings and notices.

### SERVICE LIST

**VIA U.S. MAIL AND E-MAIL**

**Brian A. McDowell, Esq. and**
**Edward Fitzgerald, Esq.**
Holland & Knight
200 S. Orange Avenue, Suite 2600
Orlando, FL 32801
Tel: 407-425-8500
Fax: 407-244-5288
Brian.mcdowell@hklaw.com
*Counsel for VP Phase III*

**J. Jeffrey Deery, Esq.**
Winderweedle Haines Ward & Woodman, PA
Post Office Box 1391 (32802)
390 N. Orange Avenue, Suite 1500
Orlando, FL 32801
Tel: 407-423-4246
Fax: 407-423-7014
jdeery@whww.com
jreiss@whww.com
*Counsel for Plaintiff, Regions Bank, an*
*Alabama state chartered bank*

**Steven W. Pickert, Esq.**
Moye, O'Brien, O'Rourke,
Pickert & Dillon, LLP
800 South Orlando Avenue
Maitland, FL 32751
Tel: 407-622-5250
Fax: 407-622-5440
swpickert@moopd.com
*Counsel for PCL Construction Services, Inc.*

**Sabrina Barber**
472 Valley View Drive
Winter Garden, FL 34787
sabrinambarber@gmail.com
*PRO SE*

0001010\131943\1534753v1

**VIA U.S. MAIL:**

**Gary Soles, Esq. and Kim Y. Nguyen, Esq.**
450 South Orange Avenue, Suite 200
Orlando, FL 32801
*Counsel for Plaintiff, Wells Fargo*

**Kevin H. Azzouz**
8263 Via Rosa
Orlando FL 32836

**Kevin H. Azzouz**
2637 E. Atlantic Blvd.
Apt 18839 E
Pompano Beach FL 33062

**Kevin H. Azzouz,**
606 Broadway, #504,
Santa Monica, CA 90401

**Kevin H. Azzouz**
1776 Tonini Drive, Apt. 11,
San Luis Obispo, CA 93405-7449

**Sabrina Barber**
472 Valley View Drive
Winter Garden, FL 34787
sabrinambarber@gmail.com
*PRO SE*
**Kevin H. Azzouz,**
2360 Foothill Rd., Apt. A
Santa Barbara, CA 93105

**Kevin H. Azzouz,**
1528 6th St., Apt. 302,
Santa Monica, CA 90401

0001010\131943\1534753v1

IN THE CIRCUIT COURT OF
THE NINTH JUDICIAL CIRCUIT IN
AND FOR ORANGE COUNTY, FLORIDA

CASE NO.: 08-CA-12672-O

WACHOVIA BANK, National Association, a
national banking association, individually, and as
agent for itself and Regions Bank, an Alabama state
chartered bank, successor by merger to AmSouth
Bank; and REGIONS BANK, an Alabama state
chartered banking association, successor by merger to
AmSouth Bank,



DOC # 20100043397  B: 9991 P: 5365
01/22/2010 10:35:44 AM  Page 1 of 5
Rec Fee: $44.00
Martha O. Haynie, Comptroller
Orange County, FL
PU - Ret To: LOWNDES DROSDICK ET AL

Plaintiffs,

v.

VP PHASE III, LTD., a Florida limited partnership;
KEVIN H. AZZOUZ, an individual; SABRINA M.
AZZOUZ, an individual; THE RESIDENCES AT
VERANDA PARK, 4000 GRANDE AVENUE,
CONDOMINIUM ASSOCIATION, INC., a Florida
corporation; UNITED RENTALS, INC., a Delaware
corporation; PCL CONSTRUCTION SERVICES,
INC., a Colorado corporation; WHIRLPOOL
CORPORATION, a Delaware corporation;
GELANDER INDUSTRIES, INC., a Florida
corporation; U.S. BRICK & BLOCK SYSTEMS,
INC., a Florida corporation; P & A ROOFING AND
SHEET METAL, INC., a Florida corporation;
MODERN PLUMBING INDUSTRIES, INC., a
Florida corporation; PINNACLE ALARM
SYSTEMS SOLUTIONS, INC., a Florida
corporation; PARKING BUILDERS, LLC, an
Oklahoma limited liability company; HD SUPPLY,
INC., a Delaware corporation; TLC ENGINEERING
FOR ARCHITECTURE, INC., a Florida corporation;
PILLAR CONSTRUCTION INC., a Virginia
corporation; ACCESS CONTROL
TECHNOLOGIES, INC., a Florida corporation; WET
STRUCTURES POOLS & SPAS, INC., a Florida
corporation; SOUTHERN FIRE PROTECTION OF
ORLANDO, INC., a Florida corporation; THE
SHERWIN-WILLIAMS COMPANY, an Ohio
corporation; SOUTHMOST DRYWALL, INC., a
Texas corporation; HKS ARCHITECTS, INC., a
Texas corporation; LEWIS MILLWORK OF SW
FLORIDA, INC., a Florida corporation; SOUTHERN
ELECTRIC SUPPLY COMPANY, INC., a Delaware

eFiled in the Office of Clerk of Court, Orange County Florida  2010 Jan 20 09:04 AM  Lydia Gardner

corporation d/b/a REXEL CONSOLIDATED; GENERATION PROPERTY GROUP, LLC, a Florida limited liability company,

                  Defendants.

---

PCL CONSTRUCTION SERVICES, INC., a Colorado corporation,

        Crossclaim Plaintiff,

v.

VP PHASE III, LLC, a Florida limited liability company; MECHANICAL SERVICES OF CENTRAL FLORIDA, INC., a Florida corporation; COASTAL CONSTRUCTION PRODUCTS, INC., a Florida corporation; BAKER BARRIOS ARCHITECTS, INC., a Florida corporation; and FORTUNE STONE, INC., a Florida corporation,

        Previously unnamed Crossclaim Defendants.
                           /

## PARTIAL SUMMARY FINAL JUDGMENT AS TO COUNTS V AND VI OF PLAINTIFFS' COMPLAINT

THIS CAUSE came on for hearing before this Court on November 20, 2009, upon the

Motion for Partial Summary Final Judgment as to Counts V and VI of Plaintiffs' Complaint (the

"Motion") by WACHOVIA BANK, National Association, a national banking association,

individually ("WACHOVIA"), and as agent for itself and Regions Bank, an Alabama state

chartered bank, successor by merger to AmSouth Bank ("WACHOVIA AGENT"), and

REGIONS BANK, an Alabama state chartered banking association ("REGIONS")

(WACHOVIA, WACHOVIA AGENT, and REGIONS collectively referred to as the

"PLAINTIFFS"), and the Court, having considered the Motion and the supporting affidavits filed

in connection therewith, having considered the pleadings filed in this cause, having heard the

arguments of counsel, and being otherwise fully advised in the premises, the Court hereby

FINDS, ORDERS and ADJUDGES as follows:

1.    PLAINTIFFS' Motion is hereby **GRANTED**.

2.    DEFENDANTS, KEVIN H. AZZOUZ ("K. AZZOUZ") and SABRINA M. AZZOUZ ("S. AZZOUZ") (K. AZZOUZ and S. AZZOUZ together, the "DEFENDANTS") have filed each separately filed an Answer and Affirmative Defenses to PLAINTIFFS' Complaint, but each said Answer and Affirmative Defenses does not create a genuine issue as to any material fact and PLAINTIFFS are entitled to a judgment as a matter of law.

3.    This Court has jurisdiction of and over the DEFENDANTS and subject matter of this action.

4.    PLAINTIFFS shall have and recover from DEFENDANTS, jointly and severally, the sum of **$66,064,880.72**, which sum represents the amount of damages incurred by PLAINTIFFS in connection with the breach of the Primary Azzouz Guaranty (as defined in the Complaint) and the Secondary Azzouz Guaranty (as defined in the Complaint) by DEFENDANTS. The amount of damages were calculated as follows:

| | | |
|---|---|---|
| A. | Principal balance due (Wachovia Note) : | $ 22,865,814.38 |
| B. | Accrued interest due (through January 20, 2010): | $6,393,179.39 |
| C. | Costs: | $8,240.25 |
| | **SUBTOTAL (WACHOVIA NOTE)** | **$29,267,234.02** |
| D. | Principal balance due (Secondary Wachovia Note): | $5,800,000.00 |
| E. | Accrued interest due (through January 20, 2010): | $1,738,652.92 |
| | **SUBTOTAL (SECONDARY WACHOVIA NOTE):** | **$7,411,984.59** |
| F. | Principal balance due (Regions Note): | $22,865,814.38 |
| G. | Accrued interest due (through January 20, 2010): | $6,393,179.39 |
| | **SUBTOTAL (REGIONS NOTE):** | **$29,258,993.77** |
| | **GRAND TOTAL:** | **$66,064,880.72** |

8.     The amounts awarded herein shall bear interest at the rate of eight percent (8%) per year in accordance with §55.03, Florida Statutes (2009).

9.     Plaintiffs' address is Wachovia Bank, National Association, 225 Water Street, FL0009, Jacksonville, FL 32202.

10.     Judgment-Debtor/Defendant's, KEVIN H. AZZOUZ, address is 12326 Park Avenue, Windermere, Florida 34786, and his Social Security Number is ▮▮▮▮▮▮▮

11.     Judgment-Debtor/Defendant's, SABRINA M. AZZOUZ, address is 9120 Galleon Drive, Orlando, Florida 32819, and her Social Security Number is ▮▮▮▮▮▮▮

12.     It is further ordered and adjudged that each judgment-debtor shall separately complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the judgment creditor's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed. Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtor to complete Form 1.977, including all required attachments, and serve it on the judgment creditor's attorney or the judgment creditor if the judgment creditor is not represented by an attorney.

FOR ALL OF WHICH AMOUNTS LET EXECUTION(S) ISSUE FORTHWITH.

DONE AND ORDERED in Orlando, Orange County, Florida, this 𝜕𝑂 day of January, 2010.

Stan Strickland
Circuit Judge

STATE OF FLORIDA, COUNTY OF ORANGE    I HEREBY CERTIFY
that the above and foregoing ... ... ... ...ginal filed in this office
... ... ... ... ..., Clerk Circuit Court
Date Jan 21 2010 By _____ D.C.

0001802\131943\126947\1

## CERTIFICATE OF SERVICE

I hereby certify that on January *20*, 2010, I filed the foregoing using the CM/ECF system, which will send an electronic notification of the filing of the foregoing to: **Zachary J. Bancroft, Esquire**, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Post Office Box 2809, Orlando, Florida 32802-2809; **Brian A. McDowell, Esquire and Edward Fitzgerald, Esquire**, Holland & Knight, 200 S. Orange Avenue, Suite 2600, Orlando, Florida 32801; **Donald L. O'Dell, Esquire**, Meier, Bonner, Muszynski, O'Dell & Harvey, 27 N. Orange Avenue, Suite 1100, Orlando, Florida, 32801; **David Willis**, Rumberger, Kirk & Caldwell, P.A., 300 South Orange Avenue, Suite 1400, Orlando, FL 32802; **Lawrence R. Heller, Esquire and Daniel M. Hirschman, Esquire**, Gilbride, Heller & Brown, P.A., One Biscayne Tower, 2 South Biscayne Blvd., Suite 1570, Miami, FL 33131; **Gregg W. McCloskey, Esquire**, McClosky, D'Anna & Dietrerle, LLP, 2300 Glades Road, Suite 400, Boca Raton, Florida 33431; **John A. Kirst, Esquire**, Gray Robinson, P.A., P.O. Box 3068, Orlando, FL 32802-3068; **William H. Beaver, Esquire**, Gray Robinson, P.A., P.O. Box 3068, Orlando, FL 32802-3068; **Troy K. Smith, Esquire**, Rogers Towers, P.A., 1301 Riverplace Blvd., Suite 1500, Jacksonville, FL 32207-9000; **Michael C. Sasso, Esquire**, Michael S. Sasso, P.A., 1031 W. Morse Blvd., Suite 260, Winter Park, Florida 32789; **Steven W. Pickert, Esquire**, Moye, O'Brien, O'Rourke, Pickert & Martin, LLP, 800 South Orlando Avenue, Maitland, Florida 32751; **James E. Shepherd, Esquire**, Shepherd, McCabe & Cooley, 1450 State Road 434 West, Suite 200, Longwood, FL 32750 and **R. Scott Shuker, Esquire**, Latham, Shuker, Eden & Beaudine, LLP, 390 North Orange Avenue, Suite 600, Orlando, Florida 32801.

I further certify that on January *20* 2010, I served the foregoing on the following non-ECF participants by United States First Class Mail: **Henry P. Johnson, Esquire**, 6640 Willow Park Drive, Naples, Florida 34109; **Barry S. Webber, Esquire**, Webber, Hinden, McLean & Arbeiter, P.A., PO Box 848549, Pembroke Pines, FL 33084; **The Residences at Veranda Park, 4000 Grande Avenue, Condominium Association, Inc.**, c/o Kevin H. Azzouz, Registered Agent, 7065 Westpointe Blvd., Suite 1318, Orlando FL 32835; **United Rentals, Inc.** c/o Corporation Service Company, Registered Agent, 1201 Hays Street, Tallahassee Florida 32301; **Parking Builders, LLC**, C T Corporation System, Registered Agent, 1200 South Pine Island Road, Plantation Florida 33324; **Access Control Technologies, Inc.**, c/o Michael R. Knarreborg, Registered Agent, 1028 W. Washington St., Orlando Fl 32805; **The Sherwin-Williams Company**, c/o Corporation Service Company, Registered Agent, 1201 Hays Street, Tallahassee, Florida 32301; **Southern Electric Supply Company, Inc.**, c/o PB & LQ Financial Consulting, Registered Agent, 1001 Brickell Bay Drive, Suite 2408, Miami, Florida 33131; and **Generation Property Group, LLC**, c/o Joseph R. Lee, Registered Agent, 7065 Westpointe Boulevard, #318, Orlando Florida 32835.

~~Attorney~~/Judicial Assistant



*recorded*

**AMERICAN MOMENTUM BANK**
4830 W. Kennedy Blvd., Suite 200
Tampa, FL 33609

**FDIC**

```
*********AUTO**ALL FOR AADC 328
1166 0.8070 AB 0.360      7 3 52
Sabrina M Barber Homestead Acct
Homestead Account, POD Mara E. Azzouz     Date 10/13/09          Page    1
POD Melina M. Azzouz, POD Teresa B Kosta  Primary Account          0012
12253 Park Ave                            Enclosures
Windermere FL  34786-7711
```

```
        CHECKING ACCOUNTS

Account Title          Sabrina M Barber Homestead Acct
                       Homestead Account, POD Mara E. Azzouz
                       POD Melina M. Azzouz, POD Teresa B Kosta

H Momentum Premier Money Market          Number of Enclosures              0
  Account Number              0012       Statement Dates  9/15/09 thru 10/13/09
  Previous Balancing    1,066,515.60     Number of Days in this Statement   29
      Deposits                 .00       Average Ledger            220,658.40
    1 Checks/Debits     1,066,776.85     Average Collected         220,658.40
  Maintenance Fee             .00        Interest Earned              261.25
  Interest Paid            261.25        Annual Percentage Yield Earned  1.50%
  Current Balance            .00         2009 Interest Paid        18,831.47
```

Deposits and Other Credits
```
Date    Description                      Amount
9/21    Closing Entry:Accrued int paid    261.25
```
*Moved to mo*
*penalty Zy CD*

Debits and Other withdrawals
```
Date    Description                      Amount
9/21    Closing entry - zero balance   1,066,776.85-
```

```
        Daily Balance Summary
H Date      Balance        Date      Balance
  9/15    1,066,515.60    9/21        .00
```

Notice to Our Depositors - As a result of internal accounting changes, on September 1, 2009 American Momentum Bank may reclassify your NOW account balance as defined by Federal Reserve Reg D.  This will not impact your account or FDIC Insurance.



**EXHIBIT**
**"B"**

SB 000780



*2009 tax file*

## AMERICAN MOMENTUM BANK
4830 W. Kennedy Blvd., Suite 200
Tampa, FL 33609

**FDIC**

American Momentum Bank
4830 W. Kennedy Blvd. Ste. 200
Tampa, FL 33609

Sabrina M Barber Homestead Acct
PODs Mara Azzouz, Melina Azzouz, Teresa
Kosta, Mary Barber,Thaddeus Barber
12253 Park Ave
Windermere FL 34786

Time Deposit Statement
From October to December, 2009

| | | Transactions Totals | |
|---|---|---|---|
| Account number | ▇1078 | | |
| Interest Rate | 2.230000% | Deposits | .00 |
| Interest Rate Date | 9/21/09 | Withdrawals | .00 |
| Purchase Date | 9/21/09 | Interest | 5,947.32 ✓ |
| Renewal Date | | Withholding | .00 |
| Maturity Date | 9/21/11 | Forfeitures | .00 |
| Certificate Term | 24  MONTHS | | |
| Type of Account | 2 YR CD >100k | | |
| Days in Statement Period | 102 | | |
| Interest Earned | 6,668.47 | | |
| Annual Percentage Yield Earned | 2.25% | | |

| Date | Additions | Subtractions | Interest | Balance |
|---|---|---|---|---|
| Balance Last Statement | | | | 1,066,776.85 |
| 10/21/09 | | | 1,957.00 | 1,068,733.85 |
| 11/20/09 | | | 2,026.01 | 1,070,759.86 |
| 12/21/09 | | | 1,964.31 | 1,072,724.17 |

*1787.88*

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION *canned to T drive in 2009 Tax file*   FORM NO V5-1000L

**EXHIBIT**

**"C"**

SB 000781



# AMERICAN MOMENTUM BANK
4830 W. Kennedy Blvd., Suite 200
Tampa, FL 33609



American Momentum Bank
4830 W. Kennedy Blvd. Ste. 200
Tampa, FL 33609

Sabrina M Barber Homestead Acct
PODs Mara Azzouz, Melina Azzouz, Teresa
Kosta, Mary Barber,Thaddeus Barber
12253 Park Ave
Windermere FL 34786

Time Deposit Statement
From January to March, 2010

| Account number | ▉1078 | Transactions Totals | |
|---|---|---|---|
| Interest Rate | 2.230000% | Deposits | .00 |
| Interest Rate Date | 9/21/09 | Withdrawals | 1,076,532.06 |
| Purchase Date | 9/21/09 | Interest | 3,807.89 |
| Renewal Date | | Withholding | .00 |
| Maturity Date | 9/21/11 | Forfeitures | .00 |
| Certificate Term | 24  MONTHS | | |
| Type of Account 2 YR CD >100k | | | |
| Days in Statement Period | 47 | | |
| Interest Earned | 3,086.74 | | |
| Annual Percentage Yield Earned  2.25% | | | |

| Date | Additions | Subtractions | Interest | Balance |
|---|---|---|---|---|
| Balance Last Statement | | | | 1,072,724.17 |
| 1/21/10 | | | 2,033.58 | 1,074,757.75 |
| 2/17/10 | | 1,076,532.06 | | 1,774.31- |
| 2/17/10 | | | 1,774.31 | .00 |

SB 000782

*reconciled*

# AIG. Bank

**AIG Federal Savings Bank**
P.O. Box 8733
Wilmington, DE 19899-8733

000997-02262010
**Sabrina M. Barber**
**Homestead Account**
**12253 Park Ave.**
**Windermere FL 34786**

| | |
|---|---|
| **Page Number:** | **1** |
| **Start Date:** | **02-17-2010** |
| **End Date:** | **02-28-2010** |
| **Account Number** | ███8275 |

## Account Summary for Signature Money Market Checking - ████8275

| Starting Balance | + | Deposits | + | Interest Paid | - | Withdrawals | - | Service Charges | = | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 0.00 | | 1,076,532.06 | | 513.31 | | 0.00 | | 0.00 | | 1,077,045.37 |

## Transactions for Signature Money Market Checking - ████8275

| Date | Description | Checks/ Debits | Deposits/ Credits | Balance |
|---|---|---|---|---|
| 02-17 | Deposit | | 1,076,532.06 | 1,076,532.06 |
| 02-26 | Eff. 02-28 Credit Interest | | 513.31 | 1,077,045.37 ✓ |

The Annual Percentage Yield Earned for this account is 1.46%.

Summary of Overdraft and Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

### Interest Rate Summary

| Date | Rate | Date | Rate | Date | Rate |
|---|---|---|---|---|---|
| 02-17 | 1.450 | | | | |

Interest Paid YTD:    513.31

*4/12/10*
*scanned*
*T drewie*


**Member**
**FDIC**


SEE REVERSE FOR IMPORTANT INFORMATION


**EXHIBIT**
**"D"**


EQUAL HOUSING LENDER

SB 001005

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

THE DEPOSITION OF:
SABRINA M. AZZOUZ
Taken by the Plaintiff

*Certified Copy*

WACHOVIA BANK, National Association, a
national banking association, individually, and as
agent for itself and Regions Bank, an Alabama state
chartered bank, successor by merger to AmSouth
Bank; and REGIONS BANK, an Alabama state chartered
banking association, successor by merger to AmSouth Bank,

    Plaintiff,

  -vs-            CASE NO:  08-CA-12672-O

VP PHASE III, LTD., a Florida limited partnership;
KEVIN H. AZZOUZ, an individual; SABRINA M. AZZOUZ,
an individual; THE RESIDENCES AT VERANDA PARK, 4000
GRANDE AVENUE CONDOMINIUM ASSOCIATION, INC., a Florida
corporation; UNITED RENTALS, INC., a Delaware corporation,
PCL CONSTRUCTION SERVICES, INC., a Colorado corporation,
WHIRLPOOL CORPORATION, a Delaware corporation; GELANDER
INDUSTRIES, INC., a Florida corporation; U.S. BRICK &
BLOCK SYSTEMS, INC., a Florida corporation; P & A ROOFING
AND SHEET METAL, INC., a Florida corporation; MODERN
PLUMBING INDUSTRIES, INC., a Florida corporation; PINNACLE
ALARM SYSTEMS SOLUTIONS, INC., a Florida corporation;
PARKING BUILDERS, LLC, an Oklahoma limited liability
company, HD SUPPLY, INC., a Delaware corporation; TLC
ENGINEERING FOR ARCHITECTURE, INC., a Florida corporation;
PILLAR CONSTRUCTION, INC., a Virginia corporation; ACCESS
CONTROL TECHNOLOGIES, INC., a Florida corporation; WET
STRUCTURES POOLS & SPAS, INC., a Florida corporation;
SOUTHERN FIRE PROTECTION OF ORLANDO, INC., a Florida
corporation; THE SHERWIN-WILLIAMS COMPANY, an Ohio
corporation; SOUTHMOST DRYWALL, INC., a Texas corporation;
HKS ARCHITECTS, INC., a Texas corporation; LEWIS MILLWORK
OF SW FLORIDA, INC., a Florida corporation; SOUTHERN
ELECTRIC SUPPLY COMPANY, INC., a Delaware corporation d/b/a
REXEL CONSOLIDATED; GENERATION PROPERTY GROUP, LLC, a
Florida limited liability company,

    Defendants.



EXHIBIT

"E"

PCL CONSTRUCTION SERVICES, INC., a Colorado corporation,

    Cross-claim Plaintiff,

-vs-

VP PHASE III, LLC, a Florida limited liability company, MECHANICAL SERVICES OF CENTRAL FLORIDA, INC., a Florida corporation; COASTAL CONSTRUCTION PRODUCTS, INC., a Florida corporation; BAKER BARRIOS ARCHITECTS, INC., a Florida corporation; and FORTUNE STONE, INC., a Florida corporation,

    Previously unnamed Cross-claim Defendants.

DATE:  March 15, 2010

TIME:  2:08 p.m. - 4:17 p.m.

LOCATION:  450 South Orange Avenue
          Suite 800
          Orlando, Florida 32812

REPORTER:  Lisa G. Smith, RPR

MJC REPORTING, INC.

**MJC Reporting, Inc.**
**407-894-7545**

1314 E. Robinson St.                                    Orlando, FL 32801

```
1   A P P E A R A N C E S :

2

3                   ZACHARY J. BANCROFT, ESQUIRE,
                    AMANDA CARUSO, ESQUIRE, of:
4                   Lowndes, Drosdick, Doster,
                    Kantor & Reed, P.A.
5                   450 South Orange Avenue
                    Suite 800
6                   Orlando, Florida 32801
                    (407) 843-4600
7                   zachary.bancroft@lowndes-law.com
                    on behalf of the Plaintiff
8

9
                    FRANK M. BEDELL, ESQUIRE, of:
10                  Winderweedle, Haines,
                    Ward & Woodman, P.A.
11                  Post Office Box 1391
                    Orlando, Florida 32802-1391
12                  (407) 423-4246
                    fbedell@whww.com
13                  on behalf of Regions Bank

14

15                  JONATHAN B. ALPER, ESQUIRE
                    274 Kipling Court
16                  Lake Mary, Florida 32746-4124
                    (407) 444-0404
17                  jalper@alperlaw.com
                    on behalf of Sabrina M. Azzouz

18

19

20

21

22

23

24

25
```

```
 1    CD?

 2         A.    No.

 3         Q.    Any other deposits or, you know, other than

 4    interest accruing on it?

 5         A.    No.

 6         Q.    What do you intend to do with the money in

 7    that account?

 8         A.    Purchase another home.

 9         Q.    Are you currently looking for another home?

10         A.    Yes.

11         Q.    Are you working with a broker at all?

12         A.    A few.

13         Q.    Do you have the names of those brokers?

14         A.    No.

15         Q.    You don't know who they are?

16         A.    There's more than one.  I would have to look

17    it up.

18         Q.    Is Suzi Karr Realty one of them?

19         A.    No.

20         Q.    Have you made any offers on a new home?

21         A.    I have made one offer.

22         Q.    What was the purchase price?

23         A.    220,000.

24         Q.    Is the purchase of a new home tied in anyway

25    to when you can sell the current home that you're living
```

1    in?

2        A.    No.

3        Q.    Would you be able to -- well, never mind.

4    What's your time table for purchasing a new home?

5        A.    I am actively looking for the right property.

6        Q.    When would you like to close on a new home by?

7    Do you have a goal of closing date?

8        A.    Not yet.

9        Q.    What happened with respect to the $220,000

10   offer you made?

11       A.    It's pending short sale.

12       Q.    So it's a short sale offer that you made on

13   another property?

14       A.    Yeah.

15       Q.    You'd also produced a copy of your divorce

16   judgment and the settlement agreement as well.  In there

17   it said that you and Mr. Azzouz exchanged financial

18   affidavits, but they weren't being filed with the Court.

19   Do you have a copy of those financial affidavits?

20       A.    I may have a copy of my financial affidavit.

21       Q.    Another thing I note from the judgment is that

22   it leaves the subject of alimony open for a later date.

23   Are you receiving any alimony?

24       A.    No.

25       Q.    I assume you're not paying any either?

```
1        Q.    Okay.

2        A.    Or former father-in-law's home.

3        Q.    Do you know if he has any offshore bank

4   accounts of any kind that you're aware of?

5        A.    I don't know.

6        Q.    Has he had any reason to have written you a

7   check or anything in the past year?

8        A.    No.

9        Q.    I'm just trying to figure out where he might

10  have his bank account.  Let me just talk to Frank and

11  Amanda for a minute.

12            MR. ALPER:  Are you almost finished?  Because

13       I have a couple -- let's chat over here.

14            (Recess in the proceedings.)

15            MR. BANCROFT:  Okay.  I don't have any more

16       questions.

17                     CROSS EXAMINATION

18  BY MR. ALPER:

19       Q.    I'd like to ask a few questions to clarify

20  what is a few misstatements.  You talked about an offer

21  you made on a new residence for approximately how much

22  money?

23       A.    220.

24       Q.    What are you looking for as to -- what kind of

25  property are you looking for as a new permanent
```

```
 1    residence?
 2         A.    I'm looking for over a million plus for a new
 3    residence.
 4         Q.    House --
 5         A.    House with land and I would like it to be
 6    close to the West Orange Trail.
```

```
 7         Q.    Okay.  There's a -- you testified about a
 8    Fidelity IRA that you got in the divorce, remember that?
 9         A.    Yes.
10         Q.    And you said the money came from your divorce.
11    I'd like to ask you, did the money come from your
12    husband's IRA -- did the money come from another IRA?
13         A.    Yes.
14         Q.    And on the Park Avenue home, where in the
15    house are you now residing?
16         A.    At 12253 Park?  I reside over the garage.
17         Q.    So who occupies the master bedroom?
18         A.    My parents.
19         Q.    And who owns most of the household effects in
20    the house?
21         A.    My parents.
22         Q.    And do you consider this a permanent
23    residence?
24         A.    No.
25         Q.    And why not?
```

1       A.   I would never want to live across the street

2   from my old home.

3       Q.   And is it located across the street?

4       A.   It is across the street, diagonally across the

5   street from my old home.

6       Q.   So is it correct to say this is a temporary

7   residence while you're searching for your own homestead?

8       A.   Yes.

9       Q.   That's all I have.

10                      REDIRECT EXAMINATION

11  BY MR. BANCROFT:

12      Q.   Okay.  I do have a follow-up.  I guess I'm a

13  little confused.  You said you made an offer on a home

14  that was 220,000, but yet you're looking for a home

15  that's over a million.  So can you explain --

16      A.   Yes.

17      Q.   -- if you've made an offer on a home that's

18  220, how are you looking for a home that's over a

19  million?

20      A.   It was a good deal, so I was considering

21  flipping it.

22      Q.   Okay.  So this -- the home that you made the

23  offer on for 220, you did not intend that to be your

24  homestead?

25      A.   My proof of funds were funds that were -- the

1    250,000 in the AIG account.

2        Q.    Okay.  Have you made any offers on homes in

3    the million dollar range?

4        A.    Not yet.

5        Q.    How many -- have you looked at any homes in

6    that range?

7        A.    I have looked at homes in that range, yes.

8        Q.    How many have you looked at?

9        A.    Recently and over the years, I've looked at

10   quite a few.

11       Q.    Okay.  I don't have any more questions.  You

12   have the option to -- if I have the deposition prepared,

13   you have the option to read it over before it gets

14   finalized to decide if, you know, you've made any

15   mistakes or if the court reporter mistranscribed

16   something you may have said.  That's up to you and your

17   attorney.

18           MR. ALPER:  She does not waive.  She will

19       read.

20           MR. BANCROFT:  Okay.

21           (Deposition concluded at 4:17 p.m.)

22                    *    *    *    *    *

23

24

25

```
 1              E R R A T A   S H E E T

 2

 3    DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE

 4    IN RE:  Wachovia Bank vs. VP Phase III, LTD, et al

 5    DEPOSITION OF SABRINA M. AZZOUZ taken March 15, 2010

 6

 7    Page      Line      Correction              Reason

 8

 9                                          COPY

10

11

12                As of   5-27-10

13          the witness has not appeared to

14            read and sign the deposition

15                        ЬR

16

17

18

19

20    Under penalties of perjury, I declare that I have read
      my deposition and that it is true and correct subject to
21    any changes in form or substance entered here.

22

23    _____         _____

24          DATE                      SABRINA M. AZZOUZ

25    (Note:  This document no longer needs to be notarized.)
```


**AIG Bank**

*reconciled*

AIG Federal Savings Bank
P.O. Box 8733
Wilmington, DE 19899-8733

000932-04302010
**Sabrina M. Barber**
**Homestead Account**
**12253 Park Ave.**
**Windermere FL 34786**

Page Number:          1
Start Date:   04-01-2010
End Date:    04-30-2010
Account Number        ████8275

## Account Summary for Signature Money Market Checking - ████8275

| Starting Balance | + | Deposits | + | Interest Paid | - | Withdrawals | - | Service Charges | = | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 1,078,296.60 | | 0.00 | | 1,022.29 | | 234,957.56 | | 25.00 | | 844,336.33 |

## Transactions for Signature Money Market Checking - ████8275

| Date | Description | Checks/ Debits | Deposits/ Credits | Balance |
|---|---|---|---|---|
| 04-01 | Starting Balance | | | 1,078,296.60 |
| 04-15 | Wire Transfer Fee | -25.00 | | 1,078,271.60 |
| 04-15 | Withdrawal | -227,026.20 | | 851,245.40 |
| 04-29 | External Withdrawal CHASE - EPAY | -746.80 | | 850,498.60 |
| 04-29 | External Withdrawal CHASE - EPAY | -7,184.56 | | 843,314.04 |
| 04-30 | Credit Interest | | 1,022.29 | 844,336.33 ✓ |

The Annual Percentage Yield Earned for this account is 1.31%.

### Summary of Overdraft and Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

## Interest Rate Summary

| Date | Rate | Date | Rate | Date | Rate |
|---|---|---|---|---|---|
| 03-25 | 1.322 | 04-08 | 1.292 | | |

Interest Paid YTD:   2,786.83

**Member FDIC**

SEE REVERSE FOR IMPORTANT INFORMATION

EQUAL HOUSING LENDER


**EXHIBIT**
**"F"**

SB 001009

# Metes & Bounds TITLE COMPANY

| A. | Settlement Statement |
|---|---|
| | U.S. Department of Housing and Urban Development |
| | OMB No. 2502-0265 (expires 11/30/2009) |

**B. TYPE OF LOAN**

| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins. |
| 4. ☐VA | 5. ☐Conv. Ins. | |

| 6. FILE NUMBER | 7. LOAN NUMBER |
|---|---|
| 10-0041 | |

**8. MORTGAGE INSURANCE CASE NUMBER**

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals. | TitleExpress Settlement System Printed 04/15/2010 at 10:02 SI

**D. NAME OF BORROWER:** Sabrina M. Barber
ADDRESS:

**E. NAME OF SELLER:** Ramchand Seepersaud
ADDRESS:

**F. NAME OF LENDER:**
ADDRESS:

**G. PROPERTY ADDRESS:** 472 Valley View Drive, Winter Garden, FL 34787

**H. SETTLEMENT AGENT:** Metes & Bounds Title Company, Telephone: 352-242-1881 Fax: 352-241-8761
**PLACE OF SETTLEMENT:** 17301 Pagonia Road, Suite 310, Clermont, FL 34711

**I. SETTLEMENT DATE:** 04/15/2010

| J. SUMMARY OF BORROWER'S TRANSACTION: | | | K. SUMMARY OF SELLER'S TRANSACTION: | | |
|---|---|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | | **400. GROSS AMOUNT DUE TO SELLER** | | |
| 101. | Contract sales price | 229,500.00 | 401. | Contract sales price | 229,500.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement charges to borrower (line 1400) | 345.00 | 403. | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| | Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | |
| 106. | City/town taxes | | 406. | City/town taxes | |
| 107. | County taxes | | 407. | County taxes | |
| 108. | Assessments | | 408. | Assessments | |
| 109. | | | 409. | | |
| 110. | HOA Estoppel Fee Credit | 103.00 | 410. | HOA Estoppel Fee Credit | 100.00 |
| 111. | Prorated HOA Dues Credit | 170.17 | 411. | Prorated HOA Dues Credit | 170.17 |
| 112. | | | 412. | | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | | 230,115.17 | **420. GROSS AMOUNT DUE TO SELLER** | | 229,770.17 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | | |
| 201. | Deposit or earnest money | 2,000.00 | 501. | Excess Deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | | 502. | Settlement charges to seller (line 1400) | 3,578.00 |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff of First Mortgage Loan | |
| 205. | | | 505. | | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| | Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | |
| 210. | City/town taxes | | 510. | City/town taxes | |
| 211. | County taxes 01/01/10 to 04/15/10 | 1,088.97 | 511. | County taxes 01/01/10 to 04/15/10 | 1,088.97 |
| 212. | Assessments | | 512. | Assessments | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| **220. TOTAL PAID BY/FOR BORROWER** | | 3,088.97 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | | 4,666.97 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | | |
| 301. | Gross amount due from borrower (line 120) | 230,115.17 | 601. | Gross amount due to seller (line 420) | 229,770.17 |
| 302. | Less amounts paid by/for borrower (line 220) | 3,088.97 | 602. | Less reduction amount due seller (line 520) | 4,666.97 |
| **303. CASH FROM BORROWER** | | 227,026.20 | **603. CASH TO SELLER** | | 225,103.20 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent (Fed. Tax ID No: 20-2831322) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____-____-_____    SELLER(S) SIGNATURE(S): Ramesh A Seepersaud

SELLER(S) NEW MAILING ADDRESS:
SELLER(S) PHONE NUMBER(S): _____ (H) _____ (W)



EXHIBIT
"G"

SB 000611

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT   File Number: 10-0041

**SETTLEMENT STATEMENT**   TitleExpress Settlement System Printed 04/15/2010 at 10:02 SI   PAGE 2

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $229,500.00 = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ | to | | |
| 702. $ | to | | |
| 703. Commission paid at Settlement | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan Origination Fee | % | | |
| 802. Loan Discount | % | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest From       to       @$       /day | | | |
| 902. Mortgage Insurance Premium for       to | | | |
| 903. Hazard Insurance Premium for       to | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance       mo. @ $       /mo | | | |
| 1002. Mortgage Insurance       mo. @ $       /mo | | | |
| 1003. City Property Tax       mo. @ $       /mo | | | |
| 1004. County Property Tax       mo. @ $ 318.49 /mo | | | |
| 1005. Annual Assessments       mo. @ $       /mo | | | |
| 1009. Aggregate Analysis Adjustment | | 0.00 | 0.00 |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee       to Metes & Bounds Title Company | | | 500.00 |
| 1102. Abstract or title search       to Old Republic National Title Insurance | | | 125.00 |
| 1103. Title examination | | | |
| 1104. Title insurance binder       to Old Republic | | | 10.00 |
| 1105. Postage and Courier Fee       to Metes & Bounds Title Company | | 60.00 | 60.00 |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | | |
| (includes above items No:       ) | | | |
| 1108. Title Insurance       to Metes & Bounds Title Company | | | 877.50 |
| (includes above items No:       ) | | | |
| 1109. Lender's Policy | | | |
| 1110. Owner's Policy       229,500.00  - 877.50 | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording Fees Deed $10.00       ; Mortgage $       ; Release $ | | 10.00 | |
| 1202. Documentary Stamps Deed       Deed $1,606.50 ; Mortgage $ | | | 1,606.50 |
| 1203. Documentary Stamps Mtg       Deed $       ; Mortgage $ | | | |
| 1204. Intangible Tax       Deed $       ; Mortgage $ | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Home Warranty       to Old Republic | | | 399.00 |
| 1303. Home Inspection       to Able Home Inspection | | 275.00 | |
| 1400. TOTAL SETTLEMENT CHARGES       (enter on lines 103, Section J and 502, Section K) | | 345.00 | 3,578.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

SECOND BUYER(S)

_Rameld Seepersad_
SECOND SELLER(S)

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

SETTLEMENT AGENT: _____       DATE: 4/15/10

SB 000612

 **Bank**

AIG Federal Savings Bank
P.O. Box 8733
Wilmington, DE 19899-8733

000828-02282011
Sabrina M. Barber
472 Valley View Dr.
Winter Garden FL 34787

| | |
|---|---|
| Page Number: | 1 |
| Start Date: | 02-01-2011 |
| End Date: | 02-28-2011 |
| Account Number | ████0009 |

## Account Summary for Signature Money Market Checking - ████0009

| Starting Balance | + | Deposits | + | Interest Paid | - | Withdrawals | - | Service Charges | = | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 228,650.49 | | 0.00 | | 178.42 | | 228,650.49 | | 0.00 | | 178.42 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Transactions for Signature Money Market Checking - ████0009

| Date | Description | Checks/ Debits | Deposits/ Credits | Balance |
|---|---|---|---|---|
| 02-01 | Starting Balance | | | 228,650.49 |
| 02-28 | 1007  Check | -228,650.49 | | 0.00 |
| 02-28 | Credit Interest | | 178.42 | 178.42 ✓ |

## Checks for Signature Money Market Checking - ████0009

| Date | Check Number | Amount |
|---|---|---|
| 02-28 | 1007 | 228,650.49 |

\* Indicates Non-Consecutive Checks
(E) Electronic Check

The Annual Percentage Yield Earned for this account is 1.06%.

Summary of Overdraft and Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |



SEE REVERSE FOR IMPORTANT INFORMATION





SB 001034

**AIG Bank**

628

Sabrina M. Barber
472 Valley View Dr.
Winter Garden  FL  34787

| | |
|---|---|
| Page Number: | 2 |
| Start Date: | 02-01-2011 |
| End Date: | 02-28-2011 |
| Account Number | 0009 |

## Interest Rate Summary - 0009 CONTINUED

| Date | Rate | Date | Rate | Date | Rate |
|------|------|------|------|------|------|
| 01-19 | 1.055 | 02-28 | 0.000 | | |

Interest Paid YTD:    399.53

## Account Summary for Signature Money Market Checking - 8275

| Starting Balance | + | Deposits | + | Interest Paid | - | Withdrawals | - | Service Charges | = | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 722,849.60 | | 0.00 | | 582.13 | | 644,931.23 | | 0.00 | | 78,500.50 |

*****************************************************************************

## Transactions for Signature Money Market Checking - 8275

| Date | Description | Checks/ Debits | Deposits/ Credits | Balance |
|------|-------------|----------------|-------------------|---------|
| 02-01 | Starting Balance | | | 722,849.60 |
| 02-28 | External Withdrawal CHASE - AUTOPAY | -3,581.23 | | 719,268.37 |
| 02-28 | 169  Check | -641,350.00 | | 77,918.37 |
| 02-28 | Credit Interest | | 582.13 | 78,500.50 ✓ |

## Checks for Signature Money Market Checking - 8275

| Date | Check Number | Amount |
|------|--------------|--------|
| 02-28 | 169 | 641,350.00 |

* Indicates Non-Consecutive Checks
(E) Electronic Check



SB 001035

628

Sabrina M. Barber
472 Valley View Dr.
Winter Garden  FL  34787

| | |
|---|---|
| Page Number: | 3 |
| Start Date: | 02-01-2011 |
| End Date: | 02-28-2011 |
| Account Number | ██████0009 |

**Signature Money Market Checking - ████8275 CONTINUED**

The Annual Percentage Yield Earned for this account is 1.09%.

Summary of Overdraft and Returned Item Fees

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

## Interest Rate Summary

| Date | Rate | Date | Rate | Date | Rate |
|---|---|---|---|---|---|
| 11-18 | 1.085 | 02-28 | 1.025 | | |

Interest Paid YTD:    1,254.49

SB 001036

# MONTHLY STATEMENT

**Reporting Period: July 1 - 31, 2011**

Account ████████111
BLAKER ENTERPRISES LLC
ATTN SABRINA BARBER
LIMITED LIABILITY

**YOUR INDEPENDENT ADVISOR**

FIRSTRUST LLC
1673 MASON AVENUE
SUITE 100
DAYTONA BEACH FL 32117-0000
(386) 788-3737

Questions about your statement
(800) 431-3500

## ACCOUNT SUMMARY

**Total Account Value:** **$855,985.05**

### CHANGE IN ACCOUNT VALUE

| | This Month 7/1/11 - 7/31/11 | Year to Date 1/1/11 - 7/31/11 |
|---|---|---|
| BEGINNING VALUE | $859,920.57 | - |
| Deposits to Account | - | 870,000.49 |
| Dividends and Interest | 38.15 | 183.41 |
| Market Appreciation/(Depreciation) | 230.00 | (338.79) |
| Other Income or Expense | (4,201.67) | (13,860.06) |
| ENDING VALUE | $855,985.05 | $855,985.05 |
| CHANGE IN VALUE | $(3,935.52) | $855,985.05 |

*Market Appreciation/ Depreciation*
*The change in value of investments due to the market assessment of their worth, which is separate from value added by corporate actions (such as the issuance of dividend or interest payments) and your own additions or withdrawals.*

*Other Income or Expense*
*Miscellaneous expenses including management fees, as well as TD Ameritrade fees (such as for wire transfer or returned checks) and/or miscellaneous income credited to the account such as a margin interest adjustment, royalties, etc.*

### SUMMARY OF HOLDINGS (does not represent an asset allocation)

| | Market Value as of 7/31/11 | Percent of Account |
|---|---|---|
| Cash and Cash Alternatives | $850,296.05 | 99.34% |
| Exchange Traded Funds (ETFs) | 5,689.00 | 0.66 |
| TOTAL VALUE | $855,985.05 | 100.0% |

**TD Ameritrade** Institutional

MC

Page 1 of 4

EXHIBIT "I"

SB 001472

# MONTHLY STATEMENT

Reporting Period: July 1 - 31, 2011

Account ****111
BLAKER ENTERPRISES LLC
ATTN SABRINA BARBER
LIMITED LIABILITY

## HOLDINGS DETAIL

### CASH AND CASH ALTERNATIVES

| Investment Description | Market Value |
|---|---|
| FDIC INSURED DEPOSIT ACCOUNT  IDA14 NOT COVERED BY SIPC | $850,296.05 |
| **TOTAL CASH & CASH ALTERNATIVES** | **$850,296.05** |

### EXCHANGE TRADED FUNDS (ETFs)

| Investment Description | Symbol/ CUSIP | Quantity | Closing Price | Market Value |
|---|---|---|---|---|
| MARKET VECTORS GOLD MINERS ETF | GDX | 100 | $56.89 | $5,689.00 |
| **TOTAL EXCHANGE TRADED FUNDS (ETFs)** | | | | **$5,689.00** |
| *TOTAL EXCHANGE TRADED FUNDS- LONG POSITION* | | | | 5,689.00 |

| | |
|---|---|
| **TOTAL HOLDINGS** | **$855,985.05** |
| **TOTAL ACCOUNT VALUE** | **$855,985.05** |

MC

Questions? Consult your Independent Advisor:
FIRSTRUST LLC (866) 788-3737

**TD Ameritrade**
Institutional

Page 2 of 4

## MONTHLY STATEMENT

Reporting Period: July 1 - 31, 2011

Account ****4111
BLAKER ENTERPRISES LLC
ATTN SABRINA BARBER
LIMITED LIABILITY

## TRANSACTIONS DETAIL

| Transaction Date | Settlement Date | Activity Type | Description | Symbol/CUSIP | Quantity | Price | Transaction Amount |
|---|---|---|---|---|---|---|---|
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | $ - | $(193.78) |
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | - | (371.25) |
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | - | (2,902.23) |
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | - | (86.73) |
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | - | (85.85) |
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | - | (536.10) |
| 07/08 | 07/08 | Other Income or Expense | 06/30/2011-09/30/2011 MGMT FEE FIRSTRUST LLC ****111 | - | - | - | (25.73) |
| 07/29 | 07/29 | Dividends and Interest | FDIC INSURED DEPOSIT ACCOUNT IDA14 NOT COVERED BY SIPC ON 25.64 SHARES INTEREST. INSURED DEPOSIT ACCOUNT PAYABLE 07/31/2011 INSURED DEPOSIT ACCOUNT INTEREST 25.64 | MMDA14 | 36.15 | - | 36.15 |

Questions? Consult your Independent Advisor:
FIRSTRUST LLC (386) 788-3737

MC

TD **Ameritrade**
Institutional

Page 3 of 4

SB 001474

Account ●●●111

BLAKER ENTERPRISES LLC
ATTN SABRINA BARBER
LIMITED LIABILITY

# MONTHLY STATEMENT

Reporting Period: July 1 - 31, 2011

## INSURED DEPOSIT ACCOUNT TD AMERITRADE INTEREST CREDIT/EXPENSE

| Begin Date | Balance | Number of Days | Interest Rate | Interest Accrued | MTD Accrued | MTD Paid |
|---|---|---|---|---|---|---|
| 07/01 | $854,461.57 | 7 | 0.0500 | $8.19 | $8.19 | $ - |
| 07/08 | 850,259.90 | 24 | 0.0500 | 27.96 | 36.15 | 36.15 |
| **TOTAL INTEREST INCOME** | | | | | | **$36.15** |

## INSURED DEPOSIT ACCOUNT ACTIVITY

| Transaction Date | Settlement Date | Transaction | Description | Amount | Balance |
|---|---|---|---|---|---|
| Opening Balance | | | | | $854,461.57 |
| 07/11 | 07/11 | Delivered | FDIC INSURED DEPOSIT ACCOUNT IDA14 NOT COVERED BY SIPC REDEMPTION FDIC INSURED DEPOSIT ACCOUNT | $(4,201.67) | 850,259.90 |
| 07/29 | 07/29 | Received | INTEREST: INSURED DEPOSIT ACCOUNT | 36.15 | 850,296.05 |
| **Closing Balance** | | | | | **$850,296.05** |
| TD Bank NA | | | | $247,500.00 | |
| TD Bank USA NA | | | | $602,796.05 | |

FDIC Insured Deposit Account (IDA) balances reflected in your brokerage account are FDIC-insured up to applicable limits and held by TD Bank, N.A., or TD Bank USA, N.A., or both. The IDA balances are not covered by the Securities Investor Protection Corporation (SIPC) protection applicable to your brokerage account.

**** THANK YOU FOR CHOOSING TD AMERITRADE INSTITUTIONAL - END OF STATEMENT ****

Questions? Consult your Independent Advisor:
FIRSTRUST LLC (386) 788-3737

MC

**TD Ameritrade**
Institutional

Page 4 of 4

Blaker Enterprises, LLC

**EXHIBIT**

"J"

SB 000739

# ISLAND OF NEVIS
## OFFICE OF THE REGISTRAR OF COMPANIES

### *CERTIFICATE OF FORMATION*

I HEREBY CERTIFY that

## *Blaker Enterprise, LLC*

is duly formed and has filed articles of organization under the provisions of the Nevis
Limited Liability Company Ordinance 1995, as amended, on

*10th January, 2011*

Given under my Hand & Seal at Charlestown
this *10th* day of *January, 2011*

_____
Registrar of Companies

EJIDWSZL

No. L 12671

SB 000740

# ISLAND OF NEVIS
## OFFICE OF THE REGISTRAR OF COMPANIES

### *ENDORSEMENT CERTIFICATE*

**IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4 OF THE
NEVIS LIMITED LIABILITY COMPANY ORDINANCE 1995, AS AMENDED**

I CERTIFY that I have endorsed "FILED" upon the Original Articles of Organization of

## *Blaker Enterprise, LLC*

as of *10th January, 2011*

being the date of a receipt evidencing payment of all appropriate fees, upon which date
existence of said corporation commenced;

I FURTHER CERTIFY that an exact signed and acknowledged Duplicate of said Articles
of Organization has been filed with this office.

Given under my Hand & Seal at Charlestown
This *10th* day of *January, 2011*

_____
Registrar of Companies

T7bt5MK5

No. **L** 12671

# ARTICLES OF ORGANIZATION

## OF

## Blaker Enterprise, LLC

## PURSUANT TO THE NEVIS LIMITED LIABILITY COMPANY ORDINANCE 1995



SB 000742

# ARTICLES OF ORGANIZATION

For the purpose of forming a limited liability company pursuant to The Nevis Limited Liability Company Ordinance 1995, the undersigned does hereby make, subscribe, acknowledge and file in the office of the Registrar of Companies this instrument for this purpose as follows:

1.  The name of the limited liability company shall be:

## Blaker Enterprise, LLC

2.  The registered address of the company shall be Main Street, P.O. Box 556, Charlestown, Nevis. The company's registered agent at this address shall be Morning Star Holdings Limited.

3.  The company is to be managed by a Member or Members in their capacity as members.

4.  The company shall have as its principal purpose the right to engage in any lawful act or activity for which limited liability companies may now or hereafter be organized under The Nevis Limited Liability Company Ordinance 1995.

5.  The company shall have every power which a company now or hereafter organized under The Nevis Limited Liability Company Ordinance 1995 may have.

SB 000743

The name and address of each organizer
of these Articles is

**NAME**                                    **ADDRESS**

Conrad L. Smithen                          P. O. Box 556
                                           Charlestown, Nevis

IN WITNESS WHEREOF, I have executed this instrument on this 10th day of January, 2011.

SB 000744

## CERTIFICATE OF NOTARY PUBLIC

**Island of Nevis**                                    **January 10, 2011**

**Town of Charlestown**

On this date before me personally came Conrad L. Smithen known to me to be the individual described in and who executed the foregoing Articles of Organization of

### Blaker Enterprise, LLC

in accordance with the provisions of Section 4 of The Nevis Limited Liability Company Ordinance 1995 and he duly acknowledged to me that the execution thereof was his act and deed, and I do now set my hand and seal in witness of these acts in accordance with the provisions of the same Section of the Ordinance.

_____
Notary Public

SB 000745

## DESIGNATION AND ACCEPTANCE OF REGISTERED AGENT

**WHEREAS:**   Under the provisions of Section 14, of the Nevis Limited Liability Company Ordinance 1995, as amended, companies formed under that Ordinance are required to designate a Registered Agent, and failure to maintain a Registered Agent shall result in the involuntary dissolution of the company under Section 53;

**WHEREAS:** Morning Star Holdings Limited is duly licensed by the Island of Nevis Government to act as Registered Agent and meets the requirements of Section 14 of the Nevis Limited Liability Company Ordinance 1995; and

**WHEREAS:**             **Blaker Enterprise, LLC**

in order to comply with the provisions of the Ordinance, has designated Morning Star Holdings Limited its Registered Agent;

**THEREFORE:**  Morning Star Holdings Limited hereby accepts designation as Registered Agent for the above named company as of the date set forth below.

_____              _____
for Morning Star Holdings Limited        for Morning Star Holdings Limited

January 10, 2011

SB 000746

# RESIGNATION OF ORGANIZATION RIGHTS

I, Conrad L. Smithen, organizer of Blaker Enterprise, LLC a company organized under The Nevis Limited Liability Company Ordinance 1995, on the 10th day of January, 2011, having duly organized the company, do hereby relinquish all rights, title and interest in the company and do hereby resign from the position of organizer and do hereby transfer and assign unto Sabrina Barber of 472 Valley View Drive, Winter Garden, FL 34787, all my rights, title and interest as organizer of the company.

IN WITNESS WHEREOF, I have executed this instrument on the 10th day of January, 2011.

_____
Conrad L. Smithen

_____
WITNESS

SB 000747

Blaker Enterprise, LLC


Formed January 10, 2011


Minutes of the Organizational Meeting of the Organizer


The undersigned, being the Organizer of **Blaker Enterprise, LLC** held an organizational meeting at Charlestown, Nevis, at 1:30 p.m., January 10, 2011.


Upon motion duly made and carried, the following resolution was adopted:


BE IT FURTHER RESOLVED, that Sabrina Barber of 472 Valley View Drive, Winter Garden, FL 34787, be and is hereby designated Member of the company.


There being no further business, the meeting was adjourned.


_____
Conrad L. Smithen
Organizer


SB 000748

**The Blaker Enterprises, LLC Limited Liability Company**
**A Nevis, West Indies Limited Liability Company**

**Article 1**
**Creation of the Limited Liability Company**

### Section 1.1    The Limited Liability Company

This Operating Agreement which is dated January 25, 2011, establishes the conditions for operation of a limited liability company (LLC) under the laws of Nevis, West Indies, pursuant to The Nevis Limited Liability Company Ordinance of 1995 ("the Act").  Sabrina Barber, 472 Valley View Drive, Winter Garden, FL 34787, is the Initial Member of this LLC.  Subject to the provisions of the Act, the LLC's Manager shall operate the LLC under the terms and conditions of this Agreement.

### Section 1.2    The Name of the Limited Liability Company

The name of the LLC is **Blaker Enterprises, LLC.**  The Manager may change the name of the LLC or operate the LLC under different names.

### Section 1.3    Purposes of the LLC

The purposes of the LLC include, without limit, some or all of the following:

    (a)    to provide the maximum flexibility in business planning;

    (b)    to provide simplicity in dealing with tax laws and filing requirements;

    (c)    to purchase and manage investments;

    (d)    to consolidate the Member's ownership and management of different businesses and investments;

    (e)    to restrict the acquisition of interests in the Member's family business property by persons outside of the Member's family; and

    (f)    to achieve valuation discounts for taxable gifts and bequest to the Member's family.

In order to accomplish its purposes, the LLC may conduct any lawful business and investment activity permitted under the laws of Nevis and in any other jurisdiction in which it may have a business or investment interest.

The LLC may own, acquire, manage, develop, operate, sell, exchange, finance, refinance, and otherwise deal in any manner with real estate, personal property, and any other type of business as the Manager may from time to time deem to be in the best interest of the LLC.

*Blaker Enterprises, LLC*
*Operating Agreement*

*Page 1 of 15*

SB 000749

The LLC may engage in any other activities which are related or incidental to the foregoing purposes.

**Section 1.4   Principal Office of the LLC and Location of Records**

The street address of the principal office where the records of the LLC are to be maintained is 472 Valley View Drive, Winter Garden, Florida 34787, or such other place or places as The Manager determines.

**Section 1.5   Registered Agent and Registered Offices**

The name of the Registered Agent of the LLC is Morning Star Holdings Limited, Hunkins Waterfront Plaza, PO Box 556, Charlestown, Nevis, West Indies.

**Section 1.6   The Term of the LLC**

The term of the LLC shall begin on January 10, 2011, and shall continue in perpetuity, unless terminated or extended as provided in this Agreement.

**Section 1.7   Tax Matters**

The Manager shall have all authority with regard to tax matters and elections pursuant to the Code except as otherwise specified herein.

**Article 2**
**Definitions**

For purposes of this Agreement, unless the language or context clearly indicates that a different meaning is intended, the following words, terms and phrases defined in this section have the following meanings:

(a)   *Act* means the Nevis Limited Liability Company Ordinance of 1995, as amended from time to time.

(b)   *Additional Member* means a member admitted to the LLC after the execution of the Agreement who is not a Substitute Member.

(c)   *Assignee* means a transferee of an LLC Interest who has not been admitted as a Substitute Member in accordance with the provisions of this Agreement.

(d)   *Capital Contribution* means anything of value that a person contributes to the LLC as a prerequisite for, or in connection with, membership, including cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services.

*Blaker Enterprises, LLC*
*Operating Agreement*                                                        *Page 2 of 15*

(e)     *Code* means the Internal Revenue Code of 1986, as amended, and any successor to that Code.

(f)     *Immediate Family* includes any spouse, children, siblings, and parents.

(g)     *Initial Member* means Sabrina Barber. This shall initially be a single-member LLC.

(h)     *The LLC* means Blaker Enterprises, LLC, a Nevis, West Indies limited liability company filed on January 10, 2011, with the Office of the Registrar of Companies of the Island of Nevis.

(i)     *Economic Interest* shall mean the ownership interest and rights of a Member in the LLC, including, without limitation, the Member's right to a distributive share of the profits and losses, distributions of cash and property, but shall not include any other rights or benefits, including, without limitation, the right to vote on, consent to, or otherwise participate in any decision of the Members or the Manager, pursuant to this Agreement or the Act.

(j)     *Manager* means the person given rights and discretion to manage this LLC and its assets pursuant to the terms of this Agreement. *Manager* as used herein shall include the initial Manager and all successor or replacement managers.

(k)     *Member* means a person with an ownership interest in this LLC, with the rights and obligations specified under the Act or Agreement. Specifically, Member shall mean each of the parties who execute a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become a Member.

(l)     *Membership Interest* means the entire interest and rights of a Member in the LLC, including, without limitation, the Member's right to a distributive share of the Profits and Losses, distributions of cash and property; and the right to consent or approve LLC actions to the extent provided herein. All Membership Interests are subject to restrictions on transfer imposed by this Agreement and the Act. Each Member's interest is personal property and, as such, no Member shall have any interest in any of the assets of the LLC.

(m)     *Ownership Interest* means all Membership Interest and Economic Interest. The Ownership Interest held by a Member may be referred to herein as such Member's Ownership Interest or "Ownership Percentage."

(n)     *Successor Manager* means the Manager appointed pursuant to Article Six of this Agreement if all previous Managers have been removed or have resigned and no replacement Manager has been appointed by the Members.

SB 000751

(o)     *Substitute Member* means any person not previously a member who acquires, by purchase or otherwise, a LLC Interest and is admitted as a Substitute Member in accordance with the terms of Article Nine of this Agreement.

### Article 3
### Members

**Section 3.1    Name and Addresses of Member(s)**

The names and address of the initial Member is as follows:

| Name | Address |
|------|---------|
| Sabrina Barber | 472 Valley View Drive<br>Winter Garden, FL 34787 |

No certificates of ownership shall be issued to Members to evidence ownership of LLC Interests. This Agreement is the sole evidence of ownership. No other agreement or form including, for example, tax returns or financial statements, are acceptable proof of LLC Interest ownership.

**Section 3.2    Additional Members**

Additional persons or entities may be admitted to the LLC as Members, and LLC Interests may be issued to those additional Members upon unanimous consent of the current Members, which consent may be withheld for any reason in their discretion, and on such terms and conditions as determined by the Members and in accordance with the Articles of Organization and this Agreement. All new Members must sign a copy of this Agreement and agree to be bound by the terms of this Agreement.

**Section 3.3    Voting**

Unless otherwise provided in this Agreement, all actions requiring a vote of the Members shall require the approval of the majority of the Members' voting interest. Each Member shall have a voting interest in proportion to their respective LLC Interest. No Member shall have the right to vote or in any way participate in LLC affairs if and when his membership interest is subject to or threatened by a charging order lien or any other legal process that could diminish or impair his Economic Interest.

**Section 3.4    Fiduciary Duty**

Each Member shall have a fiduciary duty to the LLC and to all other Members.

SB 000752

### Section 3.5    Limitation on Liability

Each Member's liability shall be limited as set forth in this Operating Agreement, the Act and other applicable law.  No Member will have any personal liability for any debts or losses of the LLC beyond their respective Capital Contributions, except as provided by law.

### Section 3.6    Valuation of LLC Interests in the LLC

For all purposes, the value of the LLC as an entity and of LLC Interests shall be their respective fair market value as determined by appraisal or other reasonable valuation methods.

### Article 4
### Capital Contributions

### Section 4.1    Initial Capital Contribution

Sabrina Barber shall contribute $100 as her initial capital contribution to the LLC.

### Section 4.2    Additional Capital Contributions

A Member may make additional capital contributions to the LLC at any time and in any form.  The Manager may in its sole discretion determine that the LLC requires additional capital contributions, and in such case, the Manager shall give notice to each Member, or its assignee (holding an Economic Interest), of the amount of additional contributions required, each Member's proportionate share of the total capital contribution, and the date upon which the capital contribution is due and payable.  A Member's share of additional contributions shall be proportionate to the Member's (or Assignee's) Ownership Percentage.

If a Member or its Assignee fails to make the additional cash contributions required by this Section within 30 days of notice, then such Member or Assignee shall be in default of his obligations under the Agreement.  A defaulting Member forfeits his right to share in future LLC profits.  Until such time as the default is cured, a defaulting Member or its Assignee shall not be entitled to any subsequent distributions of cash or other property from the LLC, regardless of whether the Manager elects to make distributions.

Said default by a Member or Assignee shall not terminate the LLC.  The remaining Members (without regard to Assignees), in their sole discretion, may elect to continue the defaulting Member or Assignee as an inactive Member without any right to share in future profits or to receive future distributions, or they may elect to purchase the interest of the defaulting Member or Assignee for an amount equal to his capital account as of the date of default.  If the remaining Members elect to purchase the interest of the defaulting Member, written notice of such election plus payment shall be delivered to the defaulting Member (or Assignee) within one month after date of default.  If the remaining Members elect to continue the defaulting Member (or Assignee) as an inactive Member, then upon dissolution or termination of the LLC, the defaulting Member shall be entitled to receive

*Blaker Enterprises, LLC*
*Operating Agreement*                                              *Page 5 of 15*

an amount equal to his capital account determined as of date of default.  As noted, this Section shall be binding on an assignee of a Member's Ownership interest.

## Section 4.3    Record of Transfers of Membership Interest

Except as otherwise required by law, if any Ownership Interest is transferred in accordance with the terms of this Agreement, the transferee shall be credited with the portion of Capital Contribution of the transferor to the extent that it relates to the transferred LLC interest.

## Section 4.4    Interest on and Return of Capital

No member shall be entitled to any interest on any capital contribution.  No member shall have the right to demand or to receive the return of all or any portion of the Member's capital contribution.

## Article 5
## Distributions

## Section 5.1    Distributions From the LLC

It is the primary intent of the LLC to retain funds in amounts determined in the sole discretion of the Manager to meet the reasonable needs of LLC business, or to purchase or reinvest available cash in profitable investments. Cash distributions are not anticipated. Nevertheless, the Manager may in its sole discretion, but shall not be required to, distribute cash or property in kind to the Members. Pursuant to Part VI, Paragraph 34 of the Act, and notwithstanding anything to the contrary in this Agreement, distributions, if any, may be allocated among Members in proportions selected by the Manager in his discretion without regard to Members' respective contributions, prior distributions, income tax allocation, or Economic Interest.

## Section 5.2    No Implied Required Distributions

The Manager's distribution of cash or property at any time, and at any number of times, shall not imply a requirement to make any future distributions.

## Section 5.3    No Interest

A Member may elect not to withdraw all or any portion of its share of any distributions, in which event the member shall not be entitled to receive any interest.

## Section 5.4    In Kind Distributions

Notwithstanding anything to the contrary in Part VI, Paragraph 35 of the Act, the Manager, in its sole discretion, may make distributions in kind specifically including, without limitation, the making of in-kind distributions in the form of one or more annuity contracts issued to a Member and naming the Member as beneficiary.

*Blaker Enterprises, LLC*
*Operating Agreement*                                                                 *Page 6 of 15*

SB 000754

## Article 6
## Management of the LLC

### Section 6.1   Initial Manager

The LLC will be managed initially by the Manager who may or may not be a Member. The Manager may be an individual, corporate fiduciary, or financial institution. The initial Manager is Sabrina Barber. The Members may by unanimous vote and with the consent of all acting Managers appoint additional Managers. Management actions shall require majority vote of the Managers then serving.

### Section 6.2   Removal or Resignation

Any Manager may resign effective upon the delivery of written notice to any Member, unless the notice specifies a later effective date. In the event of a Manager's removal or resignation, remaining Managers, if any, shall continue to serve as Manager. Members shall have no right to remove or replace any Manager.

### Section 6.3   Successor Manager

In the event all Managers are removed, resign, or for any other reason are unable or unwilling to serve as Manager, and no Manager is then serving, the last serving Manager shall appoint the next Successor Manager. All Successor Managers must be either an individual who is not a citizen or resident of the United States or Canada or a financial institution or corporate fiduciary which does not maintain offices or regularly conduct business in the United States or Canada.. In any event, this LLC shall not terminate for the temporary absence of a Manager. A Member who is not serving as Manager has no right to appoint a Successor Manager.

### Section 6.4   Manager Powers

Except as otherwise provided in this Agreement, the Manager has sole authority to manage and operate the LLC in the ordinary course of business. The Manager shall have full power to execute and deliver on behalf of the LLC any and all documents and instruments which may be necessary to carry on any LLC business or purchase and manage any LLC investment. The Manager shall have complete discretion over investment assets of the LLC. Specific Manager powers shall include, without limitation, the powers to:

(a)   acquire by purchase, lease, or otherwise, any real or personal property, tangible or intangible;

(b)   sell, dispose, trade, or exchange LLC assets in the ordinary course of the LLC's business;

(c)   enter into agreements and contracts and to give receipts, releases and discharges;

(d)   purchase liability and other insurance to protect the LLC's business and investments;

*Blaker Enterprises, LLC*
*Operating Agreement*                                                    *Page 7 of 15*

(e)     borrow money for and on behalf of the LLC, and, in connection therewith, execute and deliver instruments authorizing the confession of judgment against the LLC;

(f)     execute or modify leases with respect to any part or all of the assets of the LLC;

(g)     prepay, in whole or in part, refinance, amend, modify, or extend any mortgages or deeds of trust which may affect any asset of the LLC and in connection therewith to execute for and on behalf of the LLC any extensions, renewals, or modifications of such mortgages or deeds of trust;

(h)     execute any and all other instruments and comments which may be necessary or in the opinion of the Manager desirable to carry out the intent and purpose of this Agreement, including, but not limited to, documents whose operation and effect extend beyond the term of the LLC;

(i)     make any and all expenditures which the Manager, in its sole discretion, deems necessary or appropriate in connection with the management of the affairs of the LLC and the carrying out of its obligations and responsibilities hereunder, including, without limitation, all legal, accounting and other related expenses incurred in connection with the organization and financing and operation of the LLC, the LLC's assets, and its investments;

(j)     to invest and reinvest LLC funds in common or preferred stocks, publically traded securities, options, investment trusts, bonds and other property, real or personal, foreign or domestic, including any undivided interest in any one or more common trust funds;

(k)     to join or become a party to, or to oppose, any reorganization, readjustment, recapitalization, foreclosure, merger, voting trust, dissolution, consolidation or exchange, and to deposit any securities with any committee, depository or trustee, and to pay any fees, expenses and assessments incurred in connection therewith, and to charge the same to principal, and to exercise conversion, subscription or other rights, and to make any necessary payments in connection therewith, or to sell any such privileges;

(l)     to vote in person at meetings of stock or security holders and adjournments thereof, and to vote by general or limited proxy with respect to any stock or securities;

(m)    to hold stock and securities in the name of a nominee without indicating the trust character of such holding, or unregistered or in such form as will pass by delivery, or to use a central depository and to permit registration in the name of a nominee;

SB 000756

(n)   to borrow money for any purpose from any source and to secure the repayment of any and all amounts so borrowed by mortgage, lien, UCC-1, security agreement, or pledge of any LLC property;

(o)   to employ and pay the compensation of accountants, attorneys, experts, investment counselors, custodians, agents, and other persons or firms providing services or advice, irrespective of whether the Manager may be associated therewith; to delegate discretionary powers to such persons or firms; and to rely upon information or advice furnished thereby or to ignore the same, as the Manager, in its discretion, may determine.

No person dealing with the Manager needs to inquire into the validity or propriety of any document or instrument executed in the name of the LLC by the Manager, or as to the authority of the Manager in executing same.

## Section 6.5   Standard of Care

The Manager shall exercise such powers and otherwise perform such duties in good faith, in the matters such Manager believes to be in the best interests of the LLC, and with such care including reasonable inquiry, using ordinary prudence, as a person in a like position would use under similar circumstances.

## Section 6.6   Action Without Meeting

Where more than one Manager is serving, any action required or permitted to be taken by the Managers may be taken without a meeting if all Managers consent in writing to such action. Such action by written consent shall have the same force and effect as a unanimous vote of the Managers.

## Section 6.7   Fees and Compensation of Managers

An individual serving as Manager shall receive reasonable compensation for its services. All corporate or institutional Managers shall be compensated based on their standard fee schedules. The LLC shall reimburse all Managers for their out-of-pocket expenses. Nothing herein contained shall be construed to preclude any Manager from serving the LLC in any other capacity as an agent, employee, attorney, or otherwise, and receiving reasonable compensation for such services.

## Section 6.8   Protection from Liability

To the full extent permitted by law, the Manager is released from liability for damages and other monetary relief on account of any act, omission, or conduct in the Manager's managerial capacity other than for fraud. No amendment or repeal of this section affects any liability or alleged liability of the Manager for acts, omissions, or conduct that occurred prior to the amendment or repeal.

*Blaker Enterprises, LLC*
*Operating Agreement*                                                    *Page 9 of 15*

### Section 6.9   The Manager Shall Not Act Under Duress

The Manager shall disregard any vote, request, advice, or instruction from the Members if the Manager believes such Member is being compelled by a U.S. court or any other source of compulsion other than a Nevis court of competent jurisdiction.

### Article 7
### Books, Records, and Bank Accounts

### Section 7.1   Books and Records

Books of account shall be kept with respect to the operation of the LLC.  Such books shall be maintained at the principal office of the LLC, or at any other place as the Manager shall determine in its discretion.

### Section 7.2   Accounting Basis and Fiscal Year

The books of account of the LLC shall be kept on a method authorized or required by the Code and as determined by the Manager, and shall be closed and balanced at the end of each LLC tax year.

### Article 8
### Transfer of LLC Interests by a Member

### Section 8.1   Restrictions on Transfer

Except as provided in this Article, a Member is prohibited from selling, transferring, encumbering or otherwise disposing of any LLC Interest without the written consent of all Members and the Manager, which consent is in their absolute discretion.

### Section 8.2   Permitted Transfers

Notwithstanding anything to the contrary in this Article, a Member may assign his LLC Interest to a Member of his Immediate Family or to a revocable or irrevocable grantor trust for the benefit thereof so long as the proposed transfer does not:

    (a)    cause the LLC to terminate for federal income tax purposes;

    (b)    result in any event of default as to any secured or unsecured obligation of the LLC;

    (c)    cause a reassessment of any real property owned by the LLC; or

    (d)    cause other adverse material impact to the LLC.

Likewise, upon a Member's death, the Member may assign his Membership Interest by will, trust, or by a validly executed beneficiary designation to an Immediate Family member or to a trust created

SB 000758

---

for the benefit of one or more Immediate Family members. If the assignment of a Member's LLC Interest by will, trust, or validly executed beneficiary designation occurs after his death, and is to more than one person in his Immediate Family, this Agreement shall be replaced by an Agreement approved by a majority of the transferees.

Assignments of LLC Interests under this Section shall not require the approval of any other Member or the Manager and the interests transferred shall continue as LLC Interests, notwithstanding any contrary provisions above.

### Section 8.3    Consequences of Transfer

Any transferee of an interest in the LLC (excluding solely the recipient of a Permitted Transfer) shall be an Assignee holding an Economic Interest and shall not acquire the rights of a Member unless and until the Assignee satisfies the requirements to become a Substitute Member. An Assignee of a Membership Interest shall have no right either to be shown as a Member of the LLC, to participate in the LLC affairs, to inspect any LLC business records, bookkeeping records, or books of account, to receive information, directly or indirectly, from the Manager or any Member about the LLC business, nor to exercise any other right of a Member. An Assignee shall be obligated to make any additional capital contributions required by this Agreement. Any Assignee of a Member's Economic Interest in the LLC shall therefore have only those rights granted to an Assignee under Part VII, Section 42 of the Act, or its successor, until such time as the Assignee has been approved as a Member of the Company and the other conditions described in this Article have been satisfied.

### Section 8.4    Valuation of Membership Interest

If Members cannot agree on the value of a Membership Interest for any purpose, including Permitted Transfers, the value shall be determined by an appraiser who is experienced in the valuation of fractional interest accounts.

### Section 8.5    Effect Upon a LLC Interest Acquired Without Consent

If any person, organization, or agency should acquire all or any part of a Member's LLC Interest involuntarily as a result of, for example:

(a)    an order of a court of competent jurisdiction which the LLC is required by Nevis law to recognize; or

(b)    being subject to a lawful charging order by a Nevis court; or

(c)    a levy or other transfer of an LLC Interest, with voting rights, which the LLC has not approved but which the LLC is required by Nevis law to recognize;

then, in such event, the converted interest shall be that of an assignee. In such event, the assignee shall not become a Substitute Member without satisfying all requirements in this Agreement for becoming a Substitute Member.

*Blaker Enterprises, LLC*
*Operating Agreement*                                               *Page 11 of 15*

SB 000759

**Section 8.6     Admission of Assignee as Substitute Member**

All Members and the Manager acting unanimously shall have the exclusive power, in their absolute discretion, to admit, or not to admit, as a Substitute Member any assignee or any other person which acquires all or any part of the interest of a Member with or without the Member's consent. The person seeking to be recognized as a Member shall execute and deliver to the LLC all instruments necessary in connection with the admission of such person as a Member in a form satisfactory to the Manager and all Members.

**Article 9**
**Admission of Additional or Substitute Member(s)**

**Section 9.1     Admission of Member**

No person, firm, corporation, trust, limited liability company, or other legal entity shall be admitted to the LLC as an additional member without the unanimous consent of the Manager and all Members, which consent may be withheld for any reason in their discretion. Therefore from the date of the formation of the LLC, any person or entity acceptable to the Manager and the Members voting unanimously in writing may become an Additional Member of the LLC by the issuance by the Company of Membership Interests for such consideration as all Members and the Manager shall determine.

**Section 9.2     Limitations**

Notwithstanding the provisions above, no additional or substitute member shall be admitted until such prospective member completes the following actions:

    (a)     provides satisfactory evidence to the Manager that such an admission will not violate any applicable securities laws, or cause a termination of the LLC;

    (b)     pays all reasonable expenses connected with such admission; and

    (c)     agrees to be bound by all of the terms and provisions of this Agreement, approved by the Manager by executing the Agreement.

**Section 9.3     Admissions in Violation of this Article**

Any admission of an additional or substitute member in violation of this Article shall be null and void and of no force and effect whatsoever.

SB 000760

**Article 10**
**Dissolution and Termination**

**Section 10.1  Events of Dissolution**

The LLC shall be dissolved upon the occurrence of any event described in this Section.

    (a)    The LLC shall be dissolved on a date designated by the Initial Member with the unanimous written consent of the Members and the Manager then serving.

    (b)    The LLC shall be dissolved upon the death of all Members unless a single Member's will or trust provides for the continuance of the LLC.

    (c)    In any event, the LLC shall be dissolved 99 years after the date of this Agreement.

**Section 10.2  Change of Situs Not Dissolution**

The Members, in their sole discretion, may, by unanimous agreement, change the situs, place of registration, or governing law of the LLC, and such change shall not constitute a dissolution of the LLC nor the creation of a new LLC or other entity.

**Section 10.3  Continuation of LLC**

Upon dissolution, the LLC shall thereafter conduct only activities necessary to wind up its affairs, unless within 90 days after the date of the event causing dissolution, a majority of the remaining Members elect to continue the LLC.

**Section 10.4  Effective Date of Dissolution**

Absent the election to continue the LLC as provided above, dissolution of the LLC shall be effective on the date on which the event occurs giving rise to the dissolution, but the LLC shall not be wound up until the LLC's Articles of Organization is canceled and the assets of the LLC have been distributed as provided in this Agreement.

**Section 10.5  Operation of the LLC After Dissolution**

During the period in which the LLC is winding up, the business of the LLC and the affairs of the Members shall continue to be governed by this Agreement.

Upon dissolution of the LLC, the Manager or, in the absence of a Manager, a liquidator appointed by a majority in interest of Members, shall liquidate the LLC property, apply and distribute the proceeds derived from the liquidation of the Property as contemplated by this Agreement, and cause the cancellation of the LLC's Articles of Organization.

*Blaker Enterprises, LLC*
*Operating Agreement*                                                    *Page 13 of 15*

SB 000761

The proceeds derived from the liquidation of the LLC property shall be distributed in the following order:

(a)     to the payment of LLC creditors, excluding Members, in the order of priority as provided by law;

(b)     to the payment of loans or advances made by the Members;

(c)     to the Members in proportion to their Capital Accounts after adjustments for all allocations of net profits and net loss.

Where the distribution consists both of cash and noncash assets, the cash shall be distributed first, in descending order, to the above categories. With respect to the noncash assets, which distribution values are to be based on the fair market value of the noncash asset as determined in good faith by the liquidator, the liquidator may sell the noncash assets and distribute the cash proceeds or distribute the assets in kind, in descending order, to the above categories. The Manager or liquidator may set up such reserves as they deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the LLC.

## Article 11
## General Matters

### Section 11.1  Successors and Assigns

Subject to the restrictions on transfer of interests provided in this Agreement, this Agreement, and each and every provision of it, shall be binding upon and shall inure to the benefits of the Members, if any, or their respective successors, personal representatives, heirs and assigns.

### Section 11.2  Amendment

The Members in their sole and absolute discretion may by unanimous written agreement amend this Agreement and/or the Articles of Organization at any time, any number of times, and for any reason, provided that all amendments are subject to the Manager's approval in its sole discretion.

### Section 11.3  Construction

Unless the context requires otherwise, words denoting the singular may be construed as denoting he plural, and words of the plural may be construed as denoting the singular. Words of one gender may be construed as denoting another gender as is appropriate within such context.

### Section 11.4  Headings of Articles, Sections, and Paragraphs

The headings of Articles, Sections, and Paragraphs used within this Agreement are included solely for the convenience and reference of the reader. They shall have no significance in the interpretation or construction of this Agreement.

*Blaker Enterprises, LLC*
*Operating Agreement*                                                    *Page 14 of 15*

SB 000762

### Section 11.5  Applicable Law

The validity of this Agreement shall be determined by reference to the laws of Nevis, West Indies, unless the situs of the LLC has been changed by unanimous consent of the Members in their sole discretion, in which case the validity of this Agreement shall be determined by reference to the laws of the then current situs.

### Section 11.6  Severability

If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid for any reason, such invalidity shall not affect the remaining provisions of this Agreement.  The remaining provisions shall be fully severable, and this Agreement shall be construed and enforced as if the invalid provision had never been included.

### Section 11.7  Executory Contract

The parties hereby intend and agree that this operating agreement constitutes an executory contract under 11 U.S.C. 365, and its successors. The Agreement is an executory contract because of the duties imposed on each of the Members and Managers including, without limitation, the fiduciary duties of Managers and Members, the duties to make additional capital contributions, and the duties to manage the business.

### Section 11.8  Enforcement

No provision of this Agreement may be enforced by or for the benefit of a creditor of any Member or by a trustee in bankruptcy.


**IN WITNESS WHEREOF,** Sabrina Barber has executed this Agreement as of the day and year first above written.


Sabrina Barber
Initial Member

Sabrina Barber
Manager


*Blaker Enterprises, LLC*
*Operating Agreement*

*Page 15 of 15*

SB 000763