IN THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

CASE NO.:

WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-by-merger to Wachovia Bank, National Association, a national banking association, individually, and as agent for itself and Regions Bank, an Alabama state chartered bank, successor-by-merger to AmSouth Bank; and REGIONS BANK, an Alabama state chartered banking association, successor-by-merger to AmSouth Bank,

    Plaintiffs,

vs.

SABRINA BARBER, an individual, f/k/a SABRINA AZZOUZ; BLAKER ENTERPRISES, LLC, a Nevis limited liability company; TD AMERITRADE, INC., a New York corporation; and APPLIED BANK, a Delaware banking corporation,

    Defendants.    /

6:14-cv-901-ORL-36KRS

## PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, WELLS FARGO BANK, NATIONAL ASSOCIATION, successor-by-merger to Wachovia Bank, National Association, a national banking association, individually, and as agent for itself and Regions Bank, an Alabama state chartered bank, successor-by-merger to AmSouth Bank ("Wells Fargo") and REGIONS BANK, an Alabama state chartered banking association, successor-by-merger to AmSouth Bank ("Regions" and together with Wells Fargo, the "Plaintiffs"), by and through their

respective undersigned attorneys, file this Emergency Motion for Temporary Restraining Order pursuant to FRCP Rule 65(b) and Local Rule 4.05 and/or for issuance of a preliminary injunction pursuant to FRCP Rule 65(a) and Local Rules 4.05(6) and 4.06 against Defendants, SABRINA BARBER, an individual, f/k/a SABRINA AZZOUZ ("Barber"), BLAKER ENTERPRISES, LLC, a Nevis limited liability company ("Blaker"), TD AMERITRADE, INC., a New York corporation ("TD"), and APPLIED BANK, a Delaware banking corporation ("Applied"), and in support thereof, with reference to the Complaint and Deposition Transcript filed herein, states as follows:

1. For the reasons explained below, the Plaintiffs respectfully move that this Court enter a temporary restraining order, followed by a preliminary injunction, against Barber, Blaker, TD, and Applied enjoining and restraining them from taking any further actions with respect to the Injunction Accounts (as defined in the Complaint), without the prior written authorization of the Plaintiffs or Order of this Court, in order to maintain the status quo while the Plaintiffs seek to enforce its remedies pursuant to its Complaint.

## BACKGROUND

2. The Plaintiffs are the owners and holders of that certain *Partial Summary Final Judgment as to Counts V and VI of Plaintiff's Complaint* entered on January 20, 2010 as modified by that certain *Deficiency Judgment as to Kevin H. Azzouz and Sabrina M. Azzouz* entered on October 3, 2013 in the amount of $62,491,162.98 in Orange County, Florida, Circuit Court Case No. 2008-CA-12672-O (together, the "Judgment"), which Judgment remains outstanding. True copies of the documents comprising the Judgment are attached to the Complaint as Composite Exhibit "A".

3. Barber is a judgment debtor under the Judgment.

4. Blaker is a single-member limited liability company, the sole member of which is Barber (Deposition 28:10-15)..

5. Among other things, Blaker owns those certain accounts located at TD and Applied as further described herein and in the Complaint.

6. On June 6, 2014, The Plaintiff's undersigned attorneys deposed Barber in aid of execution (the "Deposition"). Pursuant to documents produced in connection with the Deposition and Barber's testimony at the Deposition, the Plaintiffs have become aware of the following facts. The transcript of Barber's Deposition is being filed with this Court contemporaneously with this Complaint.

### *Homestead Accounts*

7. In connection with the sale of her former marital residence during her dissolution of marriage, Barber received approximately ONE MILLION DOLLARS sometime prior to April 13, 2009 (Deposition 67:15 – 68:4).

8. Barber deposited those funds in Account No. xxx0012 at American Momentum Bank (the "AM-012 Account"), which funds continued to earn interest until September 21, 2009, at which time the AM-012 Account contained a total sum of $1,066,776.85. A true copy of the October 2009 account statement for the AM-012 Account reflecting said amount is attached to the Complaint as Exhibit "B" and attached to the Deposition as a portion of Exhibit No. 26.

9. The AM-012 Account was designated a "homestead" account as such funds represented proceeds from the sale of Barber's former homestead, which, at the time, she allegedly intended to use to purchase another homestead.

10. On September 21, 2009, Barber closed the AM-012 Account and used the funds therein to purchase a certificate of deposit at American Momentum Bank bearing Account No. xxxxxxxx1078 (the "CD"), which was also designated a "homestead" account (Deposition 68:5-8). True copies of the October-December 2009 and January-March 2010 account statements for the CD are attached to the Complaint as Composite Exhibit "C" and attached to the Deposition as a portion of Exhibit No. 26.

11. Such funds were subsequently transferred to AIG Bank Account No. xxxxx8275 (the "AIG-275 Account") on February 17, 2010, which account was also designated as a "homestead" account (Deposition 76:5 – 77:7). A true copy of the February 2010 account statement for the AIG-275 Account reflecting such deposit is attached to the Complaint as Exhibit "D" and attached to the Deposition as Exhibit No. 34.

12. In a previous deposition of Barber conducted on March 15, 2010 (the "Prior Deposition"), Barber testified that she then had a present intent to use the funds in that account to purchase a million dollar home (Prior Deposition 57:6 – 58:14, 61:19 – 62:6, 63:12 – 64:10). True copies of the relevant portions of the Prior Deposition are attached to the Complaint as Exhibit "E".

00010101131943\1597075v1

### *Purchase of Homestead*

13. On April 15, 2010, Barber withdrew the sum of $227,026.20 from the AIG-275 Account, which remained designated a "homestead" account at such time (Deposition 77:11-23). A true copy of the April 2010 account statement for the AIG-275 Account reflecting that withdrawal is attached to the Complaint as Exhibit "F" and attached to the Deposition as Exhibit No. 35.

14. As admitted in her Deposition testimony, such funds were withdrawn to purchase a home located at 472 Valley View Drive, Winter Garden, Florida 34787, which home was then and is presently her homestead (Deposition 77:11 – 78:14).

15. The purchase of her current homestead with funds from the "homestead" account is further evidenced by Barber's identification during the Deposition of the Settlement Statement for her home, indicating "Cash From Borrower" of precisely the same amount of money ($227,026.20) that was withdrawn (Deposition 78:2-14). A true copy of said Settlement Statement is attached to the Complaint as Exhibit "G" and attached to the Deposition as a portion of Exhibit No. 36.

16. Following such purchase, the funds remaining in her "homestead" account, notwithstanding that designation, were no longer entitled to the homestead protection provided by Florida law[1] and thus would have been available to partially satisfy the Plaintiffs' Judgment.

---

[1] "[W]e hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only so much of the proceeds of the sale

### *The Blaker Transfers*

17. On February 28, 2011, Barber withdrew the sum of $641,350.00 from the AIG-275 Account as well as the sum of $228,650.49 from AIG Bank Account No. xxxxx0009 (the "<u>AIG-009 Account</u>")(Deposition 79:13 – 80:16). Added together, these sums equal $870,000.49. A true copy of the February 2011 AIG Bank statement for both such accounts is attached to the Complaint as Exhibit "H" and attached to the Deposition as Exhibit No. 38.

18. As indicated by such statements, at the time of these transfers, neither the AIG-275 Account nor the AIG-009 Account was designated as a "homestead" account.

19. On or about March 10, 2011, Barber caused the exact amount of funds previously withdrawn from AIG Bank (*i.e.*, $870,000.49) to be deposited with TD in Account No. xxx-xx4111 (the "<u>TD-111 Account</u>"), which account was established in the name of Blaker (Deposition 81:15 – 82:23). A true copy of the July 2011 account statement for the TD-111 Account evidencing such deposit is attached to the Complaint as Exhibit "I" and attached to the Deposition as Exhibit No. 41.

20. The TD-111 Account owned by Blaker was an "institutional account" which Barber explained in her Deposition meant than an investment advisor guides the investments within the account rather than her personally (Deposition 31:3-9).

---

as are intended to be reinvested in another homestead may be exempt under this holding. Any surplus over and above that amount should be treated as general assets of the debtor." <u>Orange Brevard Plumbing & Heating Co. v. La Croix</u>, 137 So.2d 201, 206 (Fla. 1962).

21. Barber caused the organization of Blaker on January 10, 2011, just a few months prior to this transfer. A true copy of the organizational documents, including the Operating Agreement, for Blaker are attached to the Complaint as Composite Exhibit "J" and attached to the Deposition as Exhibit No. 5.

22. The Operating Agreement of Blaker indicates that Barber is both the sole manager and sole member of Blaker.

### *$275,000 Subsequent Transfer*

23. In September 2011, Blaker transferred $275,000.00 from the TD-111 Account to the AIG-275 Account (which account was maintained in the name of Barber)(Deposition 83:2 – 84:25). True copies of September 2011 account statements for both such accounts evidencing this transfer are attached to the Complaint as Composite Exhibit "K" and attached to the Deposition as Exhibit Nos. 42 and 43.

24. Prior to this transfer, the AIG-275 account contained only $13,891.51.

25. During her Deposition, Barber testified that this transfer was made to avoid additional investment advisory fees on those funds (Deposition 83:6-17).

26. On February 9, 2012, Barber transferred $220,000.00 out of the AIG-275 Account, however, at the present time, the Plaintiffs are unable to identify the recipient of such funds, as Barber did not recall that information when questioned about it in her Deposition (Deposition 85:4-21). A true copy of the February 2012 account statement for the AIG-275 Account evidencing such transfer is attached to the Complaint as Exhibit "L" and attached to the Deposition as Exhibit No. 44.

### *$110,000 Subsequent Transfer*

27. On April 2, 2012, Blaker transferred $110,000.00 from the TD-111 Account to another account with TD held in the name of Blaker bearing Account No. xxx-xx2983 (the "TD-983 Account")(Deposition 85:25 – 87:19). Account statements the TD-983 account for April 2012 and August 2012 evidencing such transfer are attached to the Complaint as Composite Exhibit "M" and attached to the Deposition as Exhibit Nos. 45 and 46.

### *The Current Funds*

28. Barber further testified and noted in her response to Interrogatory No. 19 of *Plaintiff's Interrogatories in Aid of Execution Directed to Defendant, Sabrina M. Azzouz, n/k/a Sabrina M. Barber* propounded in connection with the Judgment that she fired her investment advisor in 2013 and thereafter converted the TD-111 account to "retail" account, whereby she would personally guide the investments within the account (Deposition 31:3-17, 90:11 – 91:2, 91:19 – 92:10). A true copy of Barber's response to said Interrogatories is attached to the Complaint as Exhibit "N" and attached to the Deposition as Exhibit No. 2.

29. Barber testified in her Deposition that this change in account type lead to the closure of the TD-111 Account, and the opening, with the same funds, of TD Account No. xxx-xx3474 (the "TD-474 Account"), also held in the name of Blaker (Deposition 91:19 – 92:10).

30. As of April 30, 2014 (the date of the last statement produced by Barber for each such account), the TD-474 Account had a total value of $489,848.13 and the TD-

983 Account had a total value of $77,191.69. True copies of such account statements are attached to the Complaint as Composite Exhibit "O" and attached to the Deposition as Exhibit Nos. 49 and 50.

### *The Impending Transfers to Mauritius*

31. In her Deposition, Barber testified that not all of the funds indicated by the April 2014 statement presently remained in the TD-474 Account, as approximately $265,552.02 had been transferred to Applied Bank as a conduit to an anticipated further transfer in the near future to an investment advisor named Investors Europe located in the Republic of Mauritius (an island nation located off the coast of Africa, east of Madagascar)(Deposition 92:11 – 96:13).

32. Upon information and belief, such funds may presently be located in Applied Bank Account No. xxxxxx8079 or Account No. xxxxxx9688 (which Barber previously maintained) or may be in a newly opened account in the name of either Barber or Blaker (collectively, the "Applied Accounts").

33. Additionally, Barber testified in her deposition that she likewise intends to transfer the remaining balance of the TD-474 Account (approximately $224,296.11) to the same advisor in the Republic of Mauritius in the near future (Deposition 96:14 – 97:13).

## APPLICABLE LAW

34. Temporary restraining orders and preliminary injunctions will issue where the plaintiff shows: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the

0001010\131943\1597075v1

movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (affirming district court's granting of ex parte injunctive relief and denying defendant's motion for evidentiary hearing); Johnson & Johnson v. 1-800 Contacts, Inc., 299 F.3d 1242 (11th Cir. 2002); Horton v. City of St. Augustine, 272 F.3d 1318 (11th Cir. 2001).

35. It is well-settled that injunctive relief, while an extraordinary remedy, is appropriate when a legal right has been infringed by an injury for which there is no adequate legal remedy. See, e.g., Canal Authority v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974).

36. Pursuant to FRCP Rule 65(b) and Local Rule 4.05, to obtain an *ex parte* temporary restraining order, a party must show: (1) immediate and irreparable harm from specific facts by declaration; and (2) the reasons supporting the claim that notice should not be required.

## ARGUMENT

37. The Plaintiffs submit that the necessary showing has been met for the reasons given herein and in the underlying Complaint and Deposition Transcript, and as further explained below. If the Court declines to enter a temporary restraining order, it is requested that an emergency preliminary injunction hearing be set.

**A.    The Plaintiffs have a Substantial Likelihood of Success on the Merits**

38. As more particularly stated above, the funds contained in the Injunction Accounts lost their protection as "homestead" funds when Barber purchased her current

homestead located at 472 Valley View Drive, Winter Garden, Florida 34787. Such funds therefore would have been available to (partially) satisfy the Judgment, but for Barber's fraudulent conveyance of such funds to Blaker.

39. Substantially all of the information which forms the basis for these averments is derived from documents produced by Barber in connection with post-Judgment discovery and from her admissions at the Deposition; thus this information is not likely to be in dispute.

40. Accordingly, as essentially all material allegations of the Complaint have been admitted by Barber in her Deposition (a copy of the transcript of which has been filed in this action), the Plaintiffs are entitled to a temporary restraining order enjoining and restraining Barber, Blaker, TD, and Applied from taking any further actions with respect to the Injunction Accounts, without the prior written authorization of the Plaintiffs or Order of this Court, in order to maintain the status quo while the Plaintiffs seek to enforce its remedies pursuant to their Complaint.

41. The Plaintiffs further pray for preliminary injunctive relief so enjoining and restraining Barber, Blaker, TD, and Applied for the duration of the action, or until the funds in the Injunction Accounts are paid over to the Plaintiffs in partial satisfaction of the sums owed by Barber to the Plaintiffs as a result of the Judgment.

**B.   The Plaintiffs Face a Substantial Threat of Irreparable Harm without Injunction**

42. As more particularly stated above, Barber has testified that she intends to transfer the funds in the injunction Accounts to an investment advisor named Investors Europe located in the Republic of Mauritius in the near future.

43. If Barber is permitted to transfer the funds in the Injunction Accounts to Republic of Mauritius, direct, immediate and substantial harm will occur to the interests of the Plaintiffs, as such funds will be difficult, if not impossible, to locate and execute upon once within the Republic of Mauritius.

44. The element of irreparable harm is satisfied where the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual. Such is the case here. Where specific property and/or funds are the subject of an action, Wells Fargo will suffer irreparable harm if they are dissipated or otherwise concealed by Barber and/or Blaker. See, Georgia Banking Company v. GMC Lending & Mortgage Services Corp., 923 So.2d 1224 (Fla. 3d DCA 2006)(finding injunctive relief appropriate to prevent dissipation when there is specific, identifiable property); Empire Pontiac Center, Incorporated v. General Motors Acceptance Corp. 322 So. 2d 927 (Fla. 4th DCA 1975)(reversing denial of preliminary injunction preventing disbursement of sale proceeds).

45. Here, specifically identifiable funds, which funds would otherwise be available to (partially) satisfy the Plaintiffs' Judgment, are at issue, so a temporary restraining order and preliminary injunction to protect that property are clearly warranted.

C. **The Threatened Injury to the Plaintiffs Outweighs any Harm to the Defendants**

46. The balance of equities clearly tips in the Plaintiffs' favor. "In deciding whether a preliminary injunction should properly issue, the Court must balance the

0001010\131943\1597075v1

damage to both parties of granting the injunction or denying it." Lee v. Roser, 348 F.Supp 389, 393 (M.D. Fla 1972).

47. Granting injunctive relief will prevent Barber and Blaker from further dissipating and concealing the funds held in the Injunction Accounts, however, Barber and Blaker would not be harmed by the maintenance of the status quo, as during the pendency of this action such funds would remain in the Injunction Accounts, earning interest and/or dividends to the same extent that they are now.

48. On the other hand, absent a temporary restraining order and injunction, the Plaintiffs would be irreparably harmed as Barber has testified in her Deposition that she presently intends to conceal those very funds by transferring them to Mauritius. Accordingly, the balance of the equities tips in the Plaintiffs' favor. *See* Korn v. Ambassador Homes, Inc., 546 So.2d 756 (Fla. 3d DCA 1989) (finding that balancing of the equities weighed in favor preliminary injunction where injunction was necessary to preserve the status quo).

**D. Temporary Injunctive Relief for the Plaintiffs is Consistent with the Public Interest**

49. The public interest would be served by granting the temporary restraining order, preliminary injunctive relief prayed for herein as the Plaintiffs are merely seeking to preserve the status quo so that it may enforce their Judgment against the Injunction Accounts without permitting the funds contained therein to be unlawfully disposed of, secreted, concealed, or converted.

50. The validity and enforcement of judgments by the courts is in the public interest. <u>United States v. United States Fishing Vessel Maylin</u>, 130 F.R.D. 684, 687 (S.D. Fla. 1990)("the public interest lies in enforcing final judgments").

E. **The Temporary Restraining Order Should Be Issued Without Notice**

51. As attested to in her Deposition, Barber, acting for herself and through Blaker, intends to transfer the funds in the Injunction Accounts to Mauritius in the near future.

52. The Plaintiffs submit that no notice should be given to Barber or Blaker prior to entry of the temporary restraining order, as if such notice is given, it would appear that Barber and Blaker will unlawfully dispose of, secret, conceal, or convert such funds by transferring them beyond the jurisdiction of the United States before a temporary restraining order is entered.

F. **The Preliminary Injunction Bond Should be Dispensed with or be Minimal**

53. Federal Rule of Civil Procedure 65(c) provides that a party seeking a preliminary injunction shall post a bond in an amount to be determined by the court, to secure the adverse party for costs and damages if it is ultimately found that the injunction was entered improvidently. The amount of the injunction bond is within the sound discretion of the trial court. <u>Carillon Importers, Ltd. v. Frank Pesce Int'l Group, Ltd.</u>, 112 F.3d 1125, 1127 (11th Cir. 1997). Because the amount of the injunction bond is within the sound discretion of the trial court, "it may elect to require no security at all." <u>Corrigan Dispatch Co. v. Casa Guzman S.A.</u>, 569 F.2d 300, 303 (5th Cir. 1978).

54. Accordingly, the Plaintiffs request that the bond required under Federal Rule of Civil Procedure 65(c) for entry of the preliminary injunction be either dispensed with or minimal. The Plaintiffs' Judgment against Barber well exceeds the sums contained in the Injunction Accounts, the only business of Blaker (as testified to by Barber at her Deposition) is as an investment vehicle for Barber, thus no harm is likely to come to Blaker either, and, as discussed above, the Plaintiffs have a substantial likelihood of success on the merits.

55. The Plaintiffs suggests it is highly unlikely that any party will be found to have been wrongfully enjoined or restrained, or that any damage would result given that the actions of Barber and Blaker are improper and unlawful. Therefore, the Plaintiffs respectfully request that the Court dispense with the necessity of a bond, or the bond be set in a *de minimis* amount, if one is necessary at all.

WHEREFORE, the Plaintiffs request that the Court enter a temporary restraining order and a temporary injunction against Barber, Blaker, TD, and Applied enjoining and restraining them from taking any further actions with respect to the Injunction Accounts without the prior written authorization of the Plaintiffs or Order of this Court, in order to maintain the status quo while the the Plaintiffs seeks to enforce its remedies against the same pursuant to its Complaint, and for such other and further relief this Court deems just and proper.

Dated this 10th day of June, 2014.

_____
Gary Soles
Florida Bar No. 0614149

**Michael S. Provenzale**
Florida Bar No. 0056834
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 S. Orange Avenue, Suite 200
Orlando, Florida 32801
Telephone: 407-843-4600
Facsimile: 407-843-4444
gary.soles@lowndes-law.com
michael.provenzale@lowndes-law.com
deborah.meadows@lowndes-law.com
anne.fisher@lowndes-law.com
litcontrol@lowndes-law.com
*Attorneys for Plaintiff, Wells Fargo Bank, N.A.*

**Timothy J. Kiley**
Florida Bar No. 0044352
Winderweedle Haines Ward & Woodman, PA
Post Office Box 1391 (32802)
390 N. Orange Avenue, Suite 1500
Orlando, FL 32801
Tel: 407-423-4246
Fax: 407-423-7014
tkiley@whww.com
*Attorneys for Plaintiff, Regions Bank*