**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WELL FARGO BANK, N.A. and
REGIONS BANK,

       Plaintiffs/Judgment Creditors,

v.                                Case No:  6:14-cv-901-Orl-40KRS

SABRINA   BARBER   and
BLAKER ENTERPRISES, LLC,

       Defendants/Judgment Debtors.

## ORDER

This cause comes before the Court on Defendants Sabrina Barber and Blaker

Enterprises LLC's Motion to Dismiss the Complaint (Doc. 32), filed July 14, 2014.  On

July 28, 2014, Plaintiffs responded in opposition (Doc. 47).  Upon consideration, the Court

grants in part and denies in part Defendants' motion to dismiss.

## I.   BACKGROUND

### A.   Facts[1]

This dispute arises out of Plaintiffs/Judgment Creditors', Wells Fargo Bank, N.A.

and Regions Bank (collectively, "Plaintiffs"), efforts to enforce a state court judgment

against Defendants/Judgment Debtors, Sabrina Barber ("Barber") and Blaker

---

1.  This account of the facts is taken from Plaintiffs' Complaint (Doc. 1), the allegations of which the Court must accept as true to the extent Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Enterprises, LLC ("Blaker")[2] (collectively, "Defendants").   Plaintiffs are owners and holders of a deficiency judgment against Barber and another non-party in the amount of $62,491,162.98, entered by a Florida state court on October 3, 2013 (the "Deficiency Judgment).[3]  (Doc. 1, ¶ 10 & Ex. A).  On June 6, 2014, counsel for Plaintiffs deposed Barber in aid of execution of the Deficiency Judgment.  (*Id.* ¶ 14).  As a result of Barber's deposition, Plaintiffs discovered certain transfers of money by Barber which give rise to the claims Plaintiffs allege in the Complaint.  (*Id.*).

First, on an undetermined date prior to April 13, 2009, Barber received $1,000,000.00 from the sale of her former marital home through the dissolution of her marriage.  (*Id.* ¶ 15).  Barber deposited these funds into an account with American Momentum Bank, which was designated a "homestead" account.  (*Id.* ¶¶ 16–17). Barber's American Momentum Bank account accrued interest until Barber closed the account on September 21, 2009, at which point the account totaled $1,066,776.85.  (*Id.* ¶¶ 16, 18).  Barber then used these funds to purchase a certificate of deposit with American Momentum Bank, also designated as "homestead" proceeds.  (*Id.* ¶ 18).

On February 17, 2010, Barber then transferred the certificate of deposit to an account with AIG Bank ending in 275 (the "AIG-275 account"), again designated as "homestead" proceeds.  (*Id.* ¶ 19).  Barber testified at her deposition that she intended to

---

2. Blaker is a limited liability company organized under the laws of Nevis with its principal place of business in Florida.  (Doc. 1, ¶ 4).  Barber is the sole member of Blaker and is a resident of Florida.  (*Id.* ¶¶ 3, 12).

3. The Deficiency Judgment comes from the state court's entry of partial summary judgment of foreclosure on January 20, 2010.  The state court entered partial summary judgment against Barber and other defendants in the amount of $66,064,880.72.  (Doc. 1-1, Ex. A).

use these funds to purchase a home. (*Id.* ¶ 20). To that end, Barber withdrew $227,026.20 from the AIG-275 account on April 15, 2010 and used the money to purchase a home in Winter Garden, Florida. (*Id.* ¶¶ 21–22).

On January 10, 2011, Barber formed Blaker. (*Id.* ¶ 29). On February 28, 2011, Barber withdrew $641,350.00 from the AIG-275 account and withdrew $228,650.49 from a second AIG account, for a total withdrawal of $870,000.49. (*Id.* ¶ 25). Barber then deposited these funds into an account with TD Ameritrade ending in 111 established in Blaker's name (the "TD-111 account"). (*Id.* ¶ 27). At her deposition, Barber described the TD-111 account as an institutional account in which an advisor guides the account's investments. (*Id.* ¶ 28).

In September 2011, Blaker transferred $275,000.00 from the TD-111 account back to the AIG-275 account. (*Id.* ¶ 31). Barber's stated reason for the transfer was because she wanted to avoid management fees on the AIG-275 account, which had since dropped to a balance of $13,891.51. (*Id.* ¶¶ 32–33). On February 9, 2012, Barber transferred $220,000.00 out of the AIG-275 account; however, neither Plaintiffs nor Barber know where this money was transferred to. (*Id.* ¶ 34). On April 2, 2012, Blaker transferred $110,000.00 from the TD-111 account into a new account with TD Ameritrade ending in 983 (the "TD-983 account"). (*Id.* ¶ 35).

According to Barber, she has since converted the TD-111 account into a retail investment account, meaning that she, rather than an advisor, controls the account's investments. (*Id.* ¶ 36). As a result of the change in type of account, the TD-111 account was closed and its funds were transferred into a new account ending in 474 (the "TD-474 account"). (*Id.* ¶ 37). At her deposition, Barber stated she intends to transfer the funds

in the TD-474 account to Applied Bank as a conduit for investing with an advisor located in the Republic of Mauritius.  (*Id.* ¶ 39).  At the time they filed the Complaint, Plaintiffs believe that the TD-474 account holds $224,296.11, the TD-983 account holds $77,191.69, and an account with Applied Bank holds $265,552.02.  (*Id.* ¶¶ 38–41).

### B.    Procedural History

Plaintiffs initiated this lawsuit on June 10, 2014 by filing the Complaint, in which they allege four claims for relief.  Count 1 alleges a claim for injunctive relief.  (*Id.* ¶¶ 42–49).  Count 2 alleges a claim to foreclose Barber's membership interest in Blaker or, in the alternative, for a charging order against that interest.  (*Id.* ¶¶ 50–54).  Count 3 seeks to avoid the fraudulent transfers of Barber and Blaker based on actual fraud.  (*Id.* ¶¶ 55–63).  Count 4 seeks to avoid the fraudulent transfers of Barber and Blaker based on constructive fraud.  (*Id.* ¶¶ 64–71).  Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction and for failing to state claims upon which relief can be granted.  (Doc. 32).

Upon filing the Complaint, Plaintiffs additionally filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction.  (Doc. 2).  On June 13, 2014, the Court denied Plaintiffs' request for an emergency temporary restraining order and set the matter for a hearing on the issuance of a preliminary injunction.  (Doc. 10).  After conducting a hearing on the matter, the Court denied Plaintiffs' request for a preliminary injunction on July 17, 2014.  (Docs. 40, 41).

## II.    STANDARDS OF REVIEW

### A.    Challenges to Subject Matter Jurisdiction

Motions made pursuant to Federal Rule of Civil Procedure 12(b)(1) attack a district

court's subject matter jurisdiction to consider the case at bar.  Motions to dismiss under Rule 12(b)(1) come in two forms: "facial attacks" and "factual attacks."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Facial attacks only require the court to determine if the plaintiff has alleged a sufficient basis for subject matter jurisdiction.  *Id.* at 1529.  As such, the allegations within the complaint are assumed true for the purpose of the motion.  *Id.*  On the other hand, factual attacks challenge the existence of subject matter jurisdiction irrespective of what the complaint alleges.  *Garcia v. Copenhaver, Bell & Assocs., M.D's, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997).  Accordingly, in a factual attack, courts may consider information outside of the pleadings—including testimony, affidavits, and other evidence—and "may make factual findings necessary to resolve the motion."  *Hawthorne v. Baptist Hosp., Inc.*, No. 3:08cv154/MCR/MD, 2008 WL 5076991, at *2 (N.D. Fla. Nov. 24, 2008).

### B.    Failure to State a Claim Upon Which Relief Can Be Granted

Motions pursuant to Federal Rule of Civil Procedure 12(b)(6) challenge whether the plaintiff has made sufficient factual allegations to state a claim upon which relief can be granted.  In order to survive a motion to dismiss made under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  A claim is plausible on its face when the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere legal conclusions or recitation of the elements of a claim are not enough.  *Twombly*, 550 U.S. at 555.  District courts must accept all well-pleaded allegations within the complaint as true.  *Id.*  Courts must also view the complaint in the light most favorable to

the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

## III.   DISCUSSION

### A.   Count 1: Temporary Injunction

Defendants move to dismiss Count 1 on the basis that injunctive relief is not a cognizable claim, but rather a remedy that may be issued upon a finding of liability. (Doc. 32, pp. 4–5).  While Plaintiffs do not dispute this principle, Plaintiffs contend that dismissal of Count 1 would be "technical" and would only "amount to form over substance," especially in light of the Court's ruling on Plaintiff's motion for injunctive relief. (Doc. 47, ¶ 3).

The Court disagrees that a dismissal of Count 1 under Rule 12(b)(6) would be merely "technical."  It is well-established that each count within a plaintiff's complaint must "withstand scrutiny" under Rule 12(b)(6) by stating a claim for relief.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).  It is equally well-established that injunctive relief is not a proper claim for relief in and of itself, but rather a remedy that is available upon a finding of liability on a claim.  *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005); *Transatlantic, LLC v. Humana, Inc.*, No. 8:13-CV-1925-T-17TBM, 2014 WL 5039667, at *9 (M.D. Fla. Sept. 30, 2014).  Because injunctive relief is not a proper claim, Defendants' motion to dismiss will be granted as to Count 1. Plaintiffs may pursue injunctive relief as a remedy to any of the remaining claims stated in the Complaint.

**B.    Count 2: Foreclosure of Membership Interest/Issuance of Charging Order**

The Florida Limited Liability Company Act (the "Florida LLC Act"), Fla. Stat. §§ 608.401–.705, provides that a judgment creditor to any member of a limited liability company may obtain a charging order against the member's interest in the company or foreclose that interest in the company under certain circumstances.  As to a charging order, the Florida LLC Act provides:

> On application to a court of competent jurisdiction by any judgment creditor of a member or a member's assignee, the court may enter a charging order against the limited liability company interest of the judgment debtor or assignee rights for the unsatisfied amount of the judgment plus interest.

Fla. Stat. § 608.433(4)(a).  A charging order issued under this provision acts as a lien on the member's interest in the limited liability company and grants the judgment creditor the right to receive distributions from the company which the member would have otherwise been entitled to receive.  *Id.* § 608.433(4)(b).

Generally, "a charging order is the sole and exclusive remedy by which a judgment creditor . . . may satisfy a judgment" from a member's interest in a limited liability company or distributions therefrom.  *See id.* § 608.433(5).  However, where the limited liability company has only one member, the Florida LLC Act allows a judgment creditor to foreclose the member's interest in the company as follows:

> [I]f a judgment creditor of a member . . . establishes to the satisfaction of a court of competent jurisdiction that distributions under a charging order will not satisfy the judgment within a reasonable time, a charging order is not the sole and exclusive remedy by which the judgment creditor may satisfy the judgment against a judgment debtor who is the sole member of a limited liability company . . ., and upon such showing, the court may order the sale of that interest in the limited liability company pursuant to a foreclosure sale.  A

> judgment creditor may make a showing to the court that
> distributions under a charging order will not satisfy the
> judgment within a reasonable time at any time after the entry
> of the judgment and may do so at the same time that the
> judgment creditor applies for the entry of a charging order.

*Id.* § 608.433(6).  The purchaser of the member's interest at a foreclosure sale steps into the shoes of the member for all purposes and the member loses all interests and rights in the company.  *Id.* § 608.433(7).

Defendants challenge Count 2 on the grounds that this Court lacks jurisdiction to either foreclose Barber's interest in Blaker or to enter a charging order against that interest.  (Doc. 32, pp. 5–7).  Defendants' take the position that, because Blaker was organized under the laws of Nevis, it is a foreign limited liability company beyond the *in rem* or *quasi in rem* jurisdiction of this Court.[4]  (*Id.* at p. 7).  In support, Defendants rely on a recent case from Florida's Fourth District Court of Appeal, *Sargeant v. Al-Saleh*, 137 So. 3d 432 (Fla. Dist. Ct. App. 2014).  (*Id.* at pp. 6–7).  Plaintiffs take issue with the applicability of *Sargeant* to this case, stating that *Sargeant* concerns only interests in a corporation, which are legally distinct in many respects from an interest in a limited liability company.  (Doc. 47, ¶¶ 5–7).

Plaintiffs are correct that Defendants' reliance on *Sargeant* is misplaced.   In *Sargeant*, the trial court ordered debtors to turn over their stock certificates in a foreign corporation in order to help satisfy a creditor's judgment.  *Sargeant*, 137 So. 3d at 433. Just as Defendants argue here, the debtors in *Sargeant* asserted that the trial court lacked the authority to compel the turnover because the stock certificates were located outside

---

4.  Defendants' attack on subject matter jurisdiction is a factual one, thus allowing the Court to look beyond the pleadings and to make appropriate factual findings to resolve the jurisdictional question presented.  *Hawthorne*, 2008 WL 5076991, at *2.

the court's *in rem* jurisdiction.  *Id.* at 433–34.  Upon review, the Fourth District Court of Appeal agreed, holding that courts may only exercise jurisdiction over property of a debtor located within the court's jurisdictional territory.  *Id.* at 435.  Because the stock certificates in *Sargeant* were located in the Bahamas, the Netherlands, Jordan, the Isle of Man, and the Dominican Republic, the Florida trial court erred in compelling their turnover.  *Id.*

Although Defendants repeatedly refer to Blaker as a "foreign corporation," (*see* Doc. 32, pp. 6, 7), Blaker is not a corporate entity, but a limited liability company.  (Doc. 1-1, Ex. J).  Unlike stock certificates in a corporation, a membership interest in a limited liability company is intangible personal property, which "accompanies the person of the owner."[5]  *Beverly Beach Props. v. Nelson*, 68 So. 2d 604, 611 (Fla. 1953), *cert. denied* 348 U.S. 816 (1954); *cf.* Restatement (Second) of Conflict of Laws § 65 & cmt. a (describing corporate shares not embodied by a document as intangible property). Therefore, because Barber resides in Florida, Barber's membership interest in Blaker is located with her in Florida and is properly subject to *in rem* jurisdiction in this state.

Defendants additionally challenge Count 2 for failing to state a claim.  Specifically, Defendants contend that any charging order against or foreclosure of a membership interest in Blaker must be made pursuant to Nevis law, as that is the body of law that governs Blaker.  (Doc. 32, pp. 7–8).  As such, it appears that the Court is confronted with a conflict-of-laws issue as to whether it may apply the Florida LLC Act or whether it must

---

5.  Both the Florida LLC Act and Nevis law agree that a membership interest in a limited liability company is "personal property."  Fla. Stat. § 608.431; Nevis Limited Liability Company Ordinance of 1995 § 38.

apply Nevis law—in this case, the Nevis Limited Liability Company Ordinance of 1995 (hereinafter referred to and cited as the "Nevis LLC Ordinance").

The first step in analyzing a potential conflict-of-laws question is to examine the different laws at issue and determine whether those laws are in actual conflict. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009). When the laws of the competing jurisdictions are substantially similar or identical, a "false conflict" exists and "the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." *Id.* (internal quotation marks omitted).[6]

As discussed above, the Florida LLC Act provides up to two avenues for a judgment creditor to recover from a judgment debtor's membership interest in a limited liability company. First, the judgment creditor may apply to a court for a charging order to receive distributions from the company to which the judgment debtor would otherwise be entitled. Fla. Stat. § 608.433(4). Second, in cases where the judgment debtor is the sole member of the limited liability company, the judgment creditor may apply to a court to foreclose the judgment debtor's interest in the company upon the proper showing. *Id.* § 608.433(6).

---

6. It is worth noting that the Eleventh Circuit has sent mixed signals as to the propriety of a district court avoiding a full conflict-of-laws analysis where it finds a "false conflict." *Compare Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1233–35 & n.21 (11th Cir. 1995) (advising that a traditional conflict-of-laws analysis is "the more prudent course," as this approach reduces the possibility for error), *with Cooper*, 575 F.3d at 1179 (applying the "false conflict" doctrine). However, it appears that the district courts throughout Florida are nearly unanimous in embracing the doctrine. *See, e.g.*, *Gevaerts v. TD Bank, N.A.*, No. 1:14-CV-20744, 2014 WL 5493183, at *2 (S.D. Fla. Oct. 31, 2014); *Hatton v. Chrysler Can., Inc.*, 937 F. Supp. 2d 1356, 1367–68 (M.D. Fla. 2013); *Metric Sys. Corp. v. McDonnell Douglas Corp.*, 850 F. Supp. 1568, 1577–78 (N.D. Fla. 1994).

By comparison, the Nevis LLC Ordinance also allows for the entry of a charging order against a judgment debtor's membership interest in a limited liability company:

> On application to a court of competent jurisdiction by any judgment creditor of a member of a limited liability company, the court may charge the member's interest with payment of the unsatisfied amount of the judgment with interest.  To the extent so charged, the judgment creditor has only the rights of an assignee of the member's interest.

Nevis LLC Ordinance § 43(1).   However, Nevis law is clear that such a charging order "shall be the sole remed[y] available to any creditor of a member's interest," thus excluding foreclosure of the membership interest regardless of the circumstances.  *Id.* § 43(3).   Moreover, Nevis law allows the non-charged members of the limited liability company to redeem a charged member's interest, while the Florida LLC Act does not.  *Id.* § 43(2).   Based on these distinctions, the Court concludes that the remedies afforded to judgment creditors under the Florida LLC Act and the Nevis LLC Ordinance are not substantially similar and, therefore, that the conflict among the laws here is not a "false" one.   Accordingly, the Court will complete a traditional conflicts-of-law analysis.

When confronted with a "true" conflict-of-laws question, a federal court sitting in diversity must apply the forum state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "As a preliminary matter, the court must characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).   Once the legal issue has been characterized, the court applies the choice of law rules that the forum state applies to that category.  *Id.*

Here, the legal issue is best described as whether a membership interest in a limited liability company can be used to satisfy the judgment of a creditor of the member

who owns that interest.  As noted earlier, both the Florida LLC Act and the Nevis LLC Ordinance characterize membership interests in limited liability companies as personal property.  Fla. Stat. § 608.431; Nevis LLC Ordinance § 38.  Therefore, the legal issue in this case sounds in property.  In Florida, the law of the *situs* of the property controls.  *Wells Fargo Bank, N.A. v. Scalercio*, No. 11-60498-CIV., 2011 WL 6840583, at *2 (S.D. Fla. July 1, 2011) (citing *Quintana v. Ordono*, 195 So. 2d 577, 579 (Fla. Dist. Ct. App. 1967)); *In re Hillsborough Holdings Corp.*, 207 B.R. 299, 302 (Bankr. M.D. Fla. 1997).  As described more fully above, since Barber resides in Florida, so does her membership interest in Blaker.  *See Nelson*, 68 So. 2d at 611; *cf.* Restatement (Second) of Conflict of Laws § 65 & cmt. a.  Therefore, the *situs* of the property at issue in this case is Florida and Florida law applies.  *See Scalercio*, 2011 WL 6840583, at *2.  As a result, the Court will analyze Count 2 under the Florida LLC Act.

Based on the allegations contained in the Complaint, the Court is satisfied that Plaintiffs are plausibly entitled to enforce the Deficiency Judgment by foreclosing Barber's interest in Blaker, or in the alternative, by charging Barber's membership interest in Blaker.  Plaintiffs have attached both the underlying state court judgment and the Deficiency Judgment to the Complaint.  (Doc. 1-1, Ex. A).  Further, the Deficiency Judgment reflects an unsatisfied balance of $62,491,162.98 (*id.* at p. 3), leading the Court to reasonably infer that a charging order will not satisfy the Deficiency Judgment within a reasonable time, even considering any amounts Plaintiffs may recover from Defendants' other various bank accounts.  Finally, there is no dispute that Barber is the sole member of Blaker, thus permitting foreclosure as a possible remedy.  (Doc. 1, ¶ 12; Doc. 1-1, Ex. J, p. 14, § 3.1).  For these reasons, Plaintiffs sufficiently allege a claim for foreclosure of

interest, or in the alternative, for a charging order.  The motion to dismiss will be denied as to Count 2.

### C. Counts 3 & 4: Avoidance of Fraudulent Transfers Based on Actual and Constructive Fraud

The Florida Uniform Fraudulent Transfer Act ("FUFTA"), Fla. Stat. §§ 726.101–.201, provides creditors with various forms of relief to avoid a debtor's fraudulent transfer of assets or funds.  Of importance to Count 3, a creditor may avoid a debtor's transfer where the creditor shows that the transfer was made "[w]ith actual intent to hinder, delay, or defraud."  Fla. Stat. § 726.105(1)(a).  To that end, FUFTA provides a non-exhaustive litany of factors—referred to as "badges of fraud"—to consider when determining whether a debtor's transfer is fraudulent as to her creditor:

(a)  The transfer or obligation was to an insider.

(b)  The debtor retained possession or control of the property transferred after the transfer.

(c)  The transfer or obligation was disclosed or concealed.

(d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e)  The transfer was of substantially all the debtor's assets.

(f)  The debtor absconded.

(g)  The debtor removed or concealed assets.

(h)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i)  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred.

(j)  The transfer occurred shortly before or shortly after a substantial debt was incurred.

> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* §§ 726.105(2)(a)–(k).  The Court may additionally consider any other factor it deems relevant and should look to the totality of the circumstances in determining actual fraud. *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498 (11th Cir. 1997). "The existence of badges of fraud creates a prima facie case and raises a rebuttable presumption that the transaction is void."  *Wiand v. Lee*, 753 F.3d 1194, 2000 (11th Cir. 2014) (quoting *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. Dist. Ct. App. 2013)) (internal quotation marks omitted).

FUFTA also allows a creditor to avoid a debtor's transfer that is constructively fraudulent.  In order to establish a prima facie case for avoidance based on constructive fraud, the creditor must show that the debtor did not receive reasonable value for the transfer and either (1) the debtor was engaged or was about to engage in a business or transaction for which the debtor's remaining assets were unreasonably small in relation, (2) the debtor intended to, believed, or reasonably should have believed that she would incur debt beyond what she could pay as the debt became due, or (3) the debtor was insolvent at the time of the transfer.  *Wiand v. Morgan*, 919 F. Supp. 2d, 1342, 1355 & n.14 (M.D. Fla. Jan. 23, 2013); *see also* Fla. Stat. §§ 726.105(1)(b), 726.106(1).

Defendants attack Counts 3 and 4 on two grounds.  First, Defendants argue that Plaintiffs' factual allegations are insufficient to plead either actual or constructive theories of fraud.  (Doc. 32, pp. 9–12).  Specifically, Defendants assert that although Plaintiffs have alleged some badges of fraud, they have ignored others that Defendants believe weigh against Plaintiffs' case.  (Id. at p. 10).  For example, Barber has not absconded, has not

concealed or removed assets, and voluntarily disclosed the status of her assets at her deposition. (*Id.* at pp. 10–11). As to her transfers to Blaker, Barber states that these transfers were made for legitimate investment purposes. (*Id.* at p. 11).

However, it is not for the Court to weigh the parties' respective cases on a motion to dismiss, but rather to determine whether Plaintiffs, accepting the factual allegations of the Complaint as true, have established a prima facie case for avoidance based on actual and constructive fraud. *Twombly*, 550 U.S. at 557. Here, the Complaint and the exhibits attached thereto show numerous badges of fraud under FUFTA, including:

1. Barber's transfers to Blaker were transfers to an insider, as Barber is the sole member of Blaker (Doc. 1, ¶ 12; Doc. 1-1, Ex. J, p. 14, § 3.1);

2. Barber retained possession or control of the funds transferred to Blaker because Barber is the sole member of Blaker (Doc. 1, ¶ 12; Doc. 1-1, Ex. J, p. 14, § 3.1);

3. Barber transferred the funds shortly after the state court entered summary judgment against her and shortly before Plaintiffs sued Barber for a deficiency judgment (Doc. 1, ¶¶ 25–35; Doc. 1-1, Ex. A);

4. Barber's transfers to Blaker appear to constitute substantially all of Barber's assets;

5. Barber did not receive any consideration from Blaker for the funds transferred (Doc. 1, ¶ 61(e)); and

6. Barber was insolvent at the time she made the transfers to Blaker, as the summary judgment against her was in excess of $66 million (*Id.* at Ex. A).

Due to the badges of fraud demonstrated by the Complaint and the totality of the circumstances relating to Barber's transfers to Blaker, Plaintiffs have plausibly alleged a prima facie claim for avoidance based on actual fraud. For the same reasons, Plaintiffs

have demonstrated that Barber did not receive sufficient consideration from Blaker for the transfers and that Barber was insolvent at the time of the transfers, thus alleging a prima facie claim for avoidance based on constructive fraud.  *Morgan*, 919 F. Supp. 2d at 1355 & n.14.

Second, Defendants submit that Counts 3 and 4 are barred by collateral estoppel. (Doc. 32, pp. 12–13).  Defendants contend that the Court's June 13, 2014 Order on Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction constitutes a final resolution of the merits of Plaintiffs' fraudulent transfer claims.  (*Id.*). However, it is well-settled Florida law that orders on motions for preliminary injunctive relief are afforded no such preclusive effect.  *David Vincent, Inc. v. Broward Cnty, Fla.*, 200 F.3d 1325, 1331 (11th Cir. 2000); *Eisenberg v. City of Miami Beach*, No. 13-23620-CIV, 2014 WL 4681027, at *6 (S.D. Fla. Sept. 19, 2014).[7]  Accordingly, Defendants' motion to dismiss will be denied as to Counts 3 and 4.

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendants Sabrina Barber and Blaker Enterprises LLC's Motion to Dismiss the Complaint (Doc. 32) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Defendants' motion to dismiss is **GRANTED** as to Count 1.  Count 1 of the

---

7.  There are certain circumstances where an order on preliminary injunctive relief can preclude an issue or claim, such as when the order was issued in a prior, distinct case or when the motion for injunctive relief was specially set to decide the merits of the parties' dispute.  *David Vincent, Inc.*, 200 F.3d at 1331–32; *see also Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1204–06 (Fed. Cir. 2007).  However, those circumstances are not present here.

Complaint is **DISMISSED WITH PREJUDICE**.[8]

2.  Defendants' motion to dismiss is otherwise **DENIED**.

3.  Defendants shall answer Plaintiffs' Complaint within **fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on February 4, 2015.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

8.  The parties shall not construe the dismissal of Count 1 to preclude the availability of any form of injunctive relief should Plaintiffs succeed on any of the remaining claims.